HENRY W. CATER, for use of the CENTRAL BANK OF ALABAMA, *v.* H. B. MERRELL & Co.

In the contract of pledge, the mention of the amount of the debt intended to be secured, required by Article 3125 of the Civil Code, is in no sense a formality. It is essential to the contract, and as such not abolished by section 2d of the Act of 1855 relative to pledges.

APPEAL from the Fourth District Court of New Orleans, *Price, J.* *Semmes & Labatt,* for plaintiff and appellant. *Singleton & Clack,* for defendants.

BUCHANAN, J. We are of opinion that the answer of the garnishee and appellee, *Eagar,* to the two sets of interrogatories propounded to him by plaintiff, and the documents annexed to those answers, give the date of the advance by *Eager* to defendants, and of the instrument of pledge subscribed by defendants for the security of that advance, with sufficient precision.

But the objection made to the validity of the pledge appears well founded. The instrument of pledge does not state the amount of the debt which it was given to secure. It reads as follows :

" For value received, I hereby pledge to *J. Eager, Esq.,* all right, title, and in-

terest that I have, in six hundred and twenty-nine bales of gunny bags, to be disposed of by him at any time he may think proper."

The Civil Code, Art. 3125, provides that the privilege of the pledgee of movable effects, " shall take place against third persons only in case the power is proved by act made either in a public form, or under private signature; provided that in this last case, it be duly registered in the office of a notary public, at a time not suspicious; provided also, that whatever may be the form of the act, it mentions the amount of the debt as well as the species and nature of the thing given in pledge, or has a statement annexed thereto of its number, weight and measure."

The Act of 1815, page 348, relative to pledges, section 2d, has modified, in some respects, the law as laid down in this Article of the Code quoted. The section reads as follows :

" All pledges of movable property may be made by private writing, accompanied by actual delivery ; and the delivery of property in a warehouse, shall pass by a private assignment of the warehouse receipt, so as to authorize the owner to pledge such property; and such pledge, so made, without further formalities, shall be valid as well against third persons as against the pledgees thereof, if made in good faith."

By comparing this law with the 3125th Article of the Code, it is obvious that the clause " without further formalities," means the registry of private acts of pledge in the office of a notary public, required by the Code. But the mention of the amount of the debt intended to be secure, like that of the specific property pledged for the security of the debt, is in no sense a formality. It is essential to the contract of pledge—so essential, that without such mention, the contract would be unintelligible.

For what is a pledge? It is an auxiliary contract for the enforcement of any lawful obligation. C. C. 3100, 3103. It results from this definition, that there should be no uncertainty or ambiguity as to the nature and extent of the principal obligation, which it is the object of the pledge to aid and enforce.

Otherwise, it is impossible to ascertain the nature and extent of the rights and obligations of the pledgor and pledgee, reciprocally, from the instrument itself. Recourse would necessarily be had to parol proof, to explain the intention of the parties. And thus the object of the law which requires this contract to be reduced to writing, would be defeated, and the door opened to the perpetration of frauds upon the parties contracting, and upon their creditors.

The garnishee cannot, therefore, retain possession of the proceeds of the gunny bags of defendant, under his so called pledge ; and the rule which calls upon him to pay over said proceeds to the Sheriff, must be made absolute.

On the trial of this rule, the garnishee offered proof that he was a commission merchant or factor. The District Court properly refused such evidence. It seems to have been offered for the purpose of establishing a different privilege upon the gunny bags, from that of the pledge, which was the only privilege asserted in the answer to interrogatories. But the appellee should have laid the foundation of such proof by a third opposition, which he has not done, but which he is, probably, still in time to do.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed ; that the rule be made absolute ; that the appellee, *Jennison Eager*, pay into the hands of the Sheriff, within three days, the sum of sixteen thousand seven hundred and seven dollars and eighty-four cents, proceeds of gunny bags of

defendant in his hands, in part satisfaction of the execution levied in this case without prejudice of said *Eager's* right to claim the said proceeds, by way of third opposition, under the privilege accorded by law to consignees, commission agents or factors; and that the appellee pay the costs of this appeal.

COLE, J., concurring. Articles 3121 and 3122 of the Civil Code, are explanatory of what species of property may be pledged. They declare that: " One may pawn every corporeal thing, which is susceptible of alienation. One may even pawn money, as security for performing or refraining to perform an act. One may, in fine, pawn incorporeal movables, such as debts and other claims of that nature."

Articles 3123, 3125, 3127, 3128 and 3129 of the Civil Code, explain the formalities necessary for the execution of pledges.

Articles 3121 and 3122, defining the kind of property that may be pledged, are not affected or changed by the Acts of 1852 and 1855.

These Acts are identical, except that in the Act of 1855, there is a section repealing all laws contrary to its provisions, and all laws upon the same subject-matter, except what is contained in the Civil Code and Code of Practice. These Acts do not relate to the nature of property that may be pledged, but only to the formalities to be pursued, and, therefore, affect the several Articles of the Code already quoted, relative to the forms necessary for the creation of pawns.

These Acts make three distinctions as to the kind of formalities necessary for the perfection of the pledge.

The first section refers to the pawning of promissory notes, bills of exchange, stocks, obligations or claims upon other persons, and the only formality required as to them is, that the debtor shall deliver to the creditor the notes, bills of exchange, certificates of stock, or other evidences of the claims or rights so pawned.

The second section refers to movable property, exclusive of the species mentioned in the first section, and provides that pledges of movable property are to be made by private writing, accompanied by actual delivery. It explains only as to one class of movables the manner of delivery, declaring the delivery of property or deposit in a warehouse, shall pass by the private assignment of the warehouse receipt.

This section only requires a private writing or act under private signature, according to the French text, and the delivery for the perfection of the formalities of a pawn.

The third section relates to credits not negotiable; it only requires for the perfection of the formalities of the pledge of this kind of property, that notice of its being pledged must be given to the debtor.

The property averred to be pledged in this case is gunny bags. The second section of these Acts then is applicable to their pledge.

This section requires that the pledge be made by private writing.

In order to determine what is necessary to put into the private act, we must refer to the Articles of the Civil Code, defining a pledge, for the Articles already quoted and the Statutes of 1852 and 1855, do not explain the nature of pledge, but merely state the property that may be pledged, and the necessary formalities.

Articles 3100, 3102 and 3103 declare, that the pledge is a *contract* by which one debtor gives something to his creditor as a security for his debt, that a thing is said to be pawned, when a movable thing is given as security, and that every lawful obligation may be enforced by the auxiliary obligation of pledge.

48

. The meaning then of the declaration in the second section of these Acts, that a pledge may be made by private writing is, that the parties may make a written contract in which it shall be specified that the debtor gives a certain thing which must be mentioned to his creditor, as a security for a debt which must also be specified.

The object of the law in requiring it to be in writing, is that the whole contract should be manifested.

If this were not the object, then there would have been no necessity of declaring that the contract of pledge should be in writing.

Besides, if it be not necessary to mention the debt which was to be secured by the pledge, then, by parity of reasoning, there would be no use to insert in the private act, the nature and amount of the property pledged.

The word pledge is used in the Statutes of 1852 and 1855, in the sense of the definition of Article 3100 of the Civil Code, which defines the contract of pledge, and as the second section of these Acts require the contract to be in writing, the private act between parties must contain what is declared to be essential by this Article, to constitute a pledge, that is a declaration of the thing given in pledge, and of the particular debt for which the thing is pledged.

In the present case, there is no particular debt specified in the act of pledge. It merely says, " for value received I hereby pledge," &c. The words " value received," do not explain the particular debt for which the gunny bags were pledged, and, therefore, this act of pledge does not create a pawn within the definition of Article 3100 of the Civil Code.

I, therefore, concur in the decree.

MERRICK, C. J., dissenting. I cannot think that the mention of the amount of the debt in the act, is of the essence of the contract of pledge. It appears to me to be nothing more than a formality.

Under the general provisions of the Code in regard to contracts, it is not necessary to specify the consideration or cause of an agreement. In the language of the Code, " an agreement is not the less valid, though the cause be not expressed." C. C. 1888, 1894.

This being the general law, any provision in regard to certain special contracts, which required the consideration to be specified or expressed in them, prescribed nothing more nor less than an additional formality or form. Such was the special law of the Code, requiring the amount of the debt to be expressed in the contracts of pledge and mortgage, which they secured.

The formalities required by the Code for the act of pledge, had come to be considered a burden and impediment to commercial transactions, when the Statute of 1852 was passed.

The Article 3125 required the pledge to be executed in notarial form, or by act under private signature, registered with a notary, in order to protect the pledgee against third persons, and whatever the form of the act, these further formalities, viz, that it should mention the *amount* of the debt, the species and nature of the thing given in pledge, or have annexed thereto a statement of its *number, weight and measure.*

And the preceding formalities were required in pledges of obligations, negotiable or not negotiable, as well as of movables.

In addition, if an obligation not negotiable were pledged, the Code required that a copy of the act at large should be duly served on the debtor of the credit pledged. If the obligation were negotiable, the law required it to be endorsed

by the party pledging it. Commercial men are proverbially careless of forms, and these provisions of the Code became a snare to business men and were a fruitful source of litigation. Hence the Act of 1852, reënacted in 1855, ought to be construed so as to advance the remedy.

It provided for two classes of objects susceptible of being pledged, viz, movables and incorporeal rights.

The latter were the subject of the first section, which discards every formality presented by the Code, except delivery. It declares : " That when a debtor wishes to pawn promissory notes, bills of exchange, stocks, obligations, or claims upon other persons, he shall deliver to the creditors, the notes, bills of exchange, certificates of stock, or other evidences of the claims or rights so pawned ; and such pawn so made *without further formalities,* shall be valid as well against third parties as against the pledgors thereof, if made in good faith."

Here then no private act is recorded, or notarial act required—no description of the property pledged ; no statement of the amount of the debt, and no indorsement of the negotiable paper, and no notice except a simple notice in the case of paper not negotiable.

Now, if it were important that the amount of the debt secured by the pledge, should be specified in writing, the lawgiver would certainly have prescribed the formality in this class of pledges which are the most easily concealed from other creditors and third parties, and are the most common mode of securing loans of money.

It cannot be denied, that this section has repealed the formalities of Article 3125 of the Code, as it respects all the objects of pledge mentioned in the first section of the Acts of 1852 and 1855.

If so, can any good reason be given why the same Article is not also repealed by the second section of the Act as to movables ? Is not the reason of the law the same ? Its language is just as forcible. It is as follows :

" Be it enacted, &c., That all pledges of movable property may be made by private writing, accompanied by actual delivery; and the delivery of property on deposit in a warehouse, shall pass by the private assignment of the warehouse receipt, so as to authorize the owner to pledge such property ; and such pledge so *made* WITHOUT FURTHER FORMALITIES, shall be valid as well against third persons as the pledgor thereof, if made in good faith."

Here again the Act makes no mention of the recording of the private act of pledge ; no mention of a particular and detailed description of the property pledged, or amount of the debt to be secured, but it expressly declares, that *all pledges of movable property may be made by private writing,* accompanied by delivery, and the same shall be valid without further formality.

It has been suggested, that if the amount of the debt is not specified in the private writing, it may give rise to great frauds. But this could not have been the motive of the lawgiver in requiring a private writing. Had it been, he would have required a private writing, specifying the debt in cases of pledges of bills of exchange, promissory notes, obligations and stocks, the most frequent objects of pledges. Moreover, he would have required the private act to be recorded, to prevent its subsequent change or modification, and to give third persons a clew to its contents, instead of trusting it entirely to the secret keeping of the pledgee.

But it is supposed, that it cannot be a private writing in the sense of the Act, unless it specifies the amount of the debt to secure which it is given. The de-

scription of the debt is but an expression of the cause of the contract. The old law expressly made such statement in the act of pledge, an essential formality. The new law appears to me to repeal the formality, and place the contract of pledge on the footing of ordinary contracts in this particular.

I do not think it essential now to describe with absolute precision, the debt or things pledged. It may be done in general terms, or even omitted as to the debt, the cause of the contract. In my opinion, a private writing in these words, " I hereby pledge to A B, all the gunny bags I have this day delivered him, to secure to him the amount I owe him by promissory notes," would be valid under the Act. So too I think the private writing in question sufficient. The Civil Code has (as already observed) declared that an agreement is not the less valid, though the cause be not expressed. C. C. 1888. When, therefore, *Merrell* declares that he pledges to *Eager* the 629 bales of gunny bags, for value received, the Civil Code permits the latter to offer testimonial proof of the cause of the pledge, proof explanatory of " the value received," viz, the nature and amount of the debt secured. C. C. 1894 ; 3 An. 235 and 281.

But suppose it be held that the formality required by Article 3125 of the Code, to mention the amount of the debt due, has not been repealed by the Act of 1852. Will an erroneous description of the debt vitiate the Act ? If the creditor mistakes the amount of his debt, is he, as in case of the registry of the mortgage, to lose the surplus ?

Under the old law, there was some reason why the amount of the debt should be specified in act of pledge. It was because, by the registry of the private act, and by the notarial act itself, publicity was given to the act of pledge, and third parties, by diligence, were enabled to know the terms thereof. This reason has ceased, by permitting verbal pledges of obligations, and the delivery of the private writing to the custody of the pledgee or the parties, in case of other movables.

In this instance, the amount of the debt and the contents of the private writing are disclosed by the answers of the garnishee to the interrogatories propounded by the plaintiff. I can see no good reason why the garnishee should be deprived of his pledge.

It will also be observed, that the act of pledge in this instance, (under the fourth section of the Act,) authorizes *Eager* to dispose of the gunny bags without the intervention of justice. This fourth section of the Act also corroborates the views I have taken, inasmuch as it permits the parties to agree to the sale or other disposition of the thing sold by the pledgee, without the formalities of a suit or any intervention of justice. This liberal provision of law is certainly in contrast with the formalities required by the Code, and gives us a further insight into the intention and scope of the Act.

The Act of 1852 was, at the time of its passage, looked upon as removing the vexatious restrictions imposed by the Code, upon this mode of raising money and securing debts, and, as such, was received with great satisfaction by the commercial community, and I am unwilling, by any construction of the Act, to revive any of the formalities prescribed by the Code, and (as I think) repealed by the sweeping provisions of the Acts of 1852 and 1855.

I think the judgment ought to be affirmed.