## FREIBURG v. DREYFUS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF LOUISIANA.

No. 228.  Argued March 24, 25, 1890. — Decided April 14, 1890.

D., a resident at New Orleans, being at the time insolvent, transferred to M. certain goods in a warehouse as a *dation en paiement*. M. pledged these goods to E. to secure $15,000, of which $5000 was loaned in cash, and $10,000 in two notes for $5000 each, which notes were executed in all respects in the manner required by the Civil Code of Louisiana, §§ 3157, 3158, in order to secure a privilege and preference under those sections. A creditor of D. commenced an action at law against him and caused these goods to be sequestered, and subsequently filed a bill in equity to set aside the whole transaction as fraudulent. Pending the proceedings the two notes matured and were paid by E.; *Held*,

(1) That these instruments were sufficient under the laws of Louisiana;
(2) That they were not simulated, but that the transaction was *bona fide*.

THE case is stated in the opinion.

*Mr. D. C. Labatt* for appellant.

*Mr. R. H. Browne* (with whom was *Mr. C. B. Singleton* on the brief) for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court for the Eastern District of Louisiana. *Weiler v. Dreyfus*, 26 Fed. Rep. 824. The facts are these: On October 30, 1883, appellants, creditors of Joseph Dreyfus, commenced an action at law against their debtor, to recover the sum of $19,000; and sequestered certain goods in the warehouse of Meyer, Weill & Co. These goods had been transferred by Dreyfus to Lehman Meyer, on October 27, as a "*dation en paiement*." On November 6, Abraham Ermann, one of the appellees filed in said suit what is known under the Louisiana Code of Practice as a petition of intervention and third opposition, wherein he

claimed that on October 29 he had loaned to said Lehman Meyer $15,000, evidenced by three notes of Meyer's, each for $5000, and had received in security therefor a pledge of the sequestered goods. The appellants answered this petition, alleging in substance that no pledge existed; that if it did exist it was fraudulent and of no force against the creditors of Dreyfus; that Meyer's title and possession were fraudulent, and intended to shield the property from the claims of creditors of Dreyfus; and that therefore this transfer of the property in pledge to appellee conferred no privilege or lien under the Louisiana law. When this action came on for trial, the Circuit Court ruled that at law the only inquiry could be as to the reality of the pledge, and not as to its fraudulent character. Thereafter a bill in equity was filed by appellants against Dreyfus, Meyer and Ermann alleging the fraudulent nature of the pledge. Upon final hearing, a decree was entered in favor of the defendants.

Passing all mere matters of practice, we address ourselves to the two substantial questions: First, whether there was a real pledge, and not a simulated transaction; and, second, whether, if sufficient in form and real, it was in fact fraudulent and void. At the time of these transactions Dreyfus was insolvent, and under the circumstances, which it is unnecessary to state in detail, the transfer of the property from him to Meyer, though good between the parties and vesting title in Meyer, was subject to be set aside at the instance of Dreyfus' creditors. Until so set aside, the title being in Meyer, he could create a valid pledge in favor of a *bona fide* party. Meyer held warehouse receipts from Meyer, Weill & Co., with whom the goods had been stored, and the loan from Ermann and the pledge to him were evidenced by three notes of $5000 each, alike excepting time of payment, of one of which the following is a copy:

" $5000.00. New Orleans, *Oct. 29th,* 1883.

"Forty days after date I promise to pay to the order of A. Ermann, Esqr., five thousand dollars, for value received, with interest at the rate of eight per cent per annum from maturity

until paid. Payable at the People's Bank of New Orleans. This note is secured by a pledge of the securities mentioned on the reverse hereof, and in case of its non-payment the holder is hereby authorized to sell the said securities at public or private sale, without recourse to legal proceedings, and to make any transfers that may be required, applying proceeds of sale towards payment of this note. Margins to be kept good.

"L. MEYER."

Endorsement: "Five warehouse receipts, dated Oct. 28th, 1883, numbered 1, 2, 3, 4, & 5, issued by Meyer, Weill & Co. to L. Meyer, and by him endorsed to A. Ermann, payee. L. Meyer."

With the notes were transferred the warehouse receipts mentioned in the endorsement. These receipts were alike in form, though covering different properties, and the following is a copy of one:

"Received from L. Meyer, in apparent good order, on storeage in our warehouse subject to the following conditions: goods deliverable on production of this receipt or on the written order of parties in whose favor it is given; goods when transferred deliverable only on return of this receipt:

"$\frac{5}{4}$ pipes B., D. & Co. cognac.

"9 barrels Smith Blair.

"$\frac{2}{8}$ pipes Cr. Gavi cognac.

"$\frac{2}{8}$ pipes Boston cognac.

"$\frac{3}{8}$ pipes kirschwasser.

"MEYER, WEILL & Co."

Endorsed: "L. Meyer."

That these instruments were sufficient in form under the laws of the State of Louisiana, where this pledge was created, and that the transaction was real and not simulated, is clear. By title twenty of the Civil Code, which treats of pledges, the right to pledge or pawn is given. (Voorhies' Revised Civil Code of Louisiana, pages 553 and following.) Articles 3157 and 3158 read as follows:

" ART. 3157. The pawn invests the creditor with the right of causing his debt to be satisfied by privilege and in preference to the other creditors of his debtor, out of the product of the movable, corporeal or incorporeal, which has been thus burdened.

" ART. 3158. But this privilege shall take place against third persons, only in case the pawn is proved by an act made either in a public form or under private signature: *Provided,* Such act has been recorded in the manner required by law : *Provided also,* That whatever may be in the form of the act, it mentions the amount of the debt, as well as the species and nature of the thing given in pledge, or has a statement annexed thereto of its number, weight and measure.

" When a debtor wishes to pawn promissory notes, bills of exchange, stocks, obligations or claims upon other persons, he shall deliver to the creditors the notes, bills of exchange, certificates of stock or other evidences of the claims or rights so pawned ; and such pawn so made, without further formalities, shall be valid as well against third persons as against the pledgers thereof, if made in good faith.

" All pledges of movable property may be made by private writing, accompanied by actual delivery ; and the delivery of property or deposit in a warehouse shall pass by the private assignment of the warehouse receipt, so as to authorize the owner to pledge such property ; and such pledge so made, without further formalities, shall be valid as well against third persons as against the pledgers thereof, if made in good faith."

The notes disclosed the amount of the debt, as well as the fact of the pledge, and the property which was pledged ; and the delivery of the warehouse receipts, as stated in the last clause of Article 3158, was a delivery of the property ; so that the pledgee had possession of the property as security for an indebtedness whose amount, time and payment were stated in, writing. In *Cater* v. *Merrell*, 14 La. Ann. 375, 378, it is said that " the word pledge is used in the statutes of 1852 and 1855 in the sense of the definition of Article 3100 of the Civil Code, which defines the contract of pledge, and as the second section of these acts requires the contract to be in writing, the private

act between parties must contain what is declared to be essen-tial by this article, to constitute a pledge, that is, a declaration of the thing given in pledge, and of the particular debt for which the thing is pledged." And in *Martin* v. *Creditors*, 15 La. Ann. 165, the court observed : " The assignment of a ware-house receipt, in the absence of a stipulation that the property is given in pledge to secure the payment of a principal obliga-tion, amount of which is specified, does not confer a privilege upon the transferee. *H. W. Cater, use of*, v. *H. B. Merrell & Co.*, 14 An. 375. Privileges are of strict right; and parties claiming them must conform to the requirements of the law. It is required, in order to create a pledge, not only that de-livery should accompany the private deed, but that the instru-ment itself should exhibit the nature and extent of the rights and obligations of the contracting parties reciprocally."

The transaction at bar comes within the requirements of these authorities. The transfer of the warehouse receipts was a delivery of the property; and the full terms of the contract of the pledge were stated on the face of the notes. And as Ermann gave to the pledgor $5000 in cash, as well as his two notes for $5000 each, there is no room to doubt that the trans-action was a real and not a simulated one; as well as that the pledge was made in conformity to the laws of the State of Louisiana. The first question therefore must be answered in favor of the appellees.

A like answer must also be given to the second. That Ermann gave the $5000 and executed his two notes, and thereafter paid those notes, so that he is out the $15,000 of the loan, is not disputed. That he had no other security, and must rely for repayment solely on the pledge, is clear. That he was a man of means, and able to make such a loan, though before he had never made a single loan of that magnitude; that he had theretofore accommodated Meyer with loans ; that his relations with Meyer were such as to justify him in loan-ing upon what seemed to be sufficient security; that he had no knowledge of whence the goods in question were obtained ; that the attendant circumstances were not such as to arouse. suspicion in the mind of a reasonably prudent man; and that

the loan and pledge have all the appearance of an ordinary business transaction, are conclusions which the testimony satisfactorily establishes. It is objected that after notice by the action at law and sequestration he paid the notes which he had given to Meyer; in. other words, that he unnecessarily paid a portion of this loan, after notice of the fraudulent character of the transactions by which Meyer acquired title, and after, by suit, his own rights under the pledge had been challenged. But the only attack by this litigation, up to the time of payment, was upon the reality of the pledge, and of that there was no question. While doubtless the failure of Dreyfus, the suits commenced against him, and the facts concerning Meyer's and Dreyfus' condition, as developed in litigation and otherwise, disclosed that the property which he had in pledge had come to him through a devious channel, yet, until some assertion of personal wrong was made against him, he was under no obligations to let his own paper go to protest, and thereby tacitly, at least, admit that his own conduct and good faith were objects of suspicion and inquiry.

We think that the conclusion of the Circuit Court on the question of *bona fides* was correct, and the decree is

*Affirmed.*