On Rehearing.
PROVOSTY, J.
The plaintiff, who is merely the pledgee, not the owner, of a mortgage note, has sued upon it as “holder and owner.” The buildings on the property mortgaged to secure the note have burned, and plaintiff has accompanied his suit by an attachment of the insurance money in the hands of the insurance companies. The holder of another mortgage note on the same property has intervened, claiming a part of the insurance money. Defendant sought to have the attachment dissolved in limine, but on grounds pertaining to the merits, and the motion to dissolve was ordered to stand as an answer. We find that this ruling was proper; in fact, defendant’s counsel have not referred to it in their arguments, and, therefore, we assume, have acquiesced in its correctness.
The first matter to be considered is whether plaintiff had grounds for attachment; and this involves the story of the case. Defendant lived in the same house with her sister, and her sister’s huband, Joseph Dugue. The latter is a building contractor, and the plaintiff company was surety on two of his contractor’s bonds. Being indebted to his sister-in-law, the defendant, he made a dation en pa'iement to her of two lots with buildings thereon. For some unexplained reason, the dation en paiement was given the form of a credit sale, the defendant executing for *895 the price her $3;000 note, to her own order, and by herself indorsed in blank and secured by mortgage and vendor’s privilege on the property, and furthermore obligating herself to insure the property in favor of the holders of the note. This is the note now sued on. The certificate of mortgages incorporated in the act of sale showed that there rested on the property a mortgage for $2,000, represented by a note. This is ■ the note now held by the intervener. A creditor of Dugue’s, named Gusachs, attacked the sale as a fraud and simulation. Pending this Cusachs suit, the defendant, finding herself in need of money with which to meet the interest on the $2,000 mortgage note and taxes and other charges, confided the $3,000 mortgage and vendor’s privilege note to her brother-in-law Dugue for him to obtain money for her on the pledge of it. Dugue applied for it in his own name to the plaintiff’s agent, Mr. Milner, and obtained the money, $470.35, executing his note for it, and pledging the $3,000 note as collateral. He, furthermore, at the same time, and in the same instrument, pledged the note to plaintiff for the following purposes: First, to secure a debt of his to plaintiff of $843.98, for payments made for him by plaintiff as surety on a building contract bond in favor of one Wm. Dieehman; and, second, to hold plaintiff harmless as his surety on a building contract bond for $7,500 in favor of one Samuel Levy, on which bond suit was (and still is) pending. The $3,000 mortgage note was thus pledged before its maturity. Whether plaintiff’s agent, Mr. Milner, knew that it did not belong to Dugue, and was without consideration, is one of the questions in the case. Defendant, it seems, did not know that Dugue had pledged her note for any other debt than that for the money borrowed for her. Pending the Cusachs suit attacking her title as fraudulent and simulated, the buildings on the property burned, and 'the insurance companies resisted payment, on the ground that her title was simulated; and she brought suit against them. The intervener also, to whom two of the policies had been transferred, brought suit against the insurance company that had issued the policies. Inasmuch as these suits-against the insurance companies involved the same issue of simulation, vel non, as the Gusachs suit, they were suffered to remain in-abeyance until the Gusachs suit should be decided. In July, 1004, this court maintained the defendant’s title. Meantime, on 29th of October, 1903, the note pledged to plaintiff had matured. In due course, after the maintenance of defendant’s title, the insurance companies were about to make payment to defendant and to intervener when plaintiff’s two agents, Mr. Milner and Mr. Block, called at the house of the defendant to see her about having the insurance money paid to plaintiff on the $3,000 note, instead of to intervener and to herself. A little boy answered the door bell, and, to the inquiry of the callers as to whether Miss Johnston was in, answered “Yes,” or nodded. Instead of Miss Johnston appearing, however, Mrs. Dugue presented herself. The agents of plaintiff asked to see Miss Johnston, and were told that she was not in, but that Mr. Dugue was in the back yard. As a matter of fact, Miss Johnston was in, and Mrs. Dugue knew it. Miss Johnston testifies, however, that she herself was sick in bed at the time, and did not know of the visit until after the visitors had left. In place of Miss Johnston, Dugue came out, and Mr. Milner asked him to have the insurance money paid to plaintiff under the pledge. He answered he did not have anything to do with Miss Johnston. Mr. Milner then said he believed Miss Johnston was in, and that they would not let him see her. A heated discussion followed, in the course of which Milner said he was going to take out proceedings, and Dugue said: “If you take any proceeding against Miss Johnston, I will do- *897 your company dirt.” Basing liimself on the occurrence here related, and on the fact that defendant had suffered one of the lots to be sold at tax sale, and to be bought in by her lawyer, and on the further fact which he had ascertained that defendant was willing that the claim of intervener herein should be paid, Mr. Milner, on the .same afternoon of his attempt to see Miss Johnston, sued out the writ' of attachment. The naked lots have greatly risen in value, but at the time of the attachment might not have been worth enough to satisfy the obligations secured by the pledge, and Miss Johnston and Dugue had no other property. The record abundantly shows that Miss Johnston had no idea whatever of defrauding her creditors. She knew nothing of the pledge of the $3,000 note to plaintiff except as security for the money borrowed for her, and she had no other debt, and she had at one time called upon plaintiff’s agent, Mr. Milner, to pay a part of this debt and had been told to wait until after the termination of the LevyDugue suit, when everything would doubtless be all right. The $2,000 mortgage note was not her debt, but it bore mortgage on- her property, and she recognized her obligation to pay it, and had consented to its payment by the insurance company.
Under the foregoing circumstances, we have no trouble in reaching the same conclusion as on the former hearing of this ease, namely, that the attachment was taken out in good faith, on grounds which plaintiff was justified in believing to be good, but which were not so in fact; and that, in consequence, the attachment must be dissolved.
In our former decision, we refused even actual damages, but we now think they should be allowed. Defendant has been kept out of her money, and in that way has suffered a loss which she ought to recover. This loss consists in the interest she has had to pay Jaubert, the intervener, from the date of the attachment, August 5, 1904, and, further, in the interest on the rest of the money at the legal rate from the same date. Attorney’s fees for dissolving the attachment cannot be allowed, the attachment not having been dissolved on motion or rule and by trial separate from the merits.
Passing to the merits, the first contention is that plaintiff, having sued as holder and owner, cannot recover as pledgee.
It is hornbook láw that the holder of a note, such as the one here sued on, passing by delivery, may sue on it as owner though not owner. Hennen’s Dig. p. 180; Louque’s Dig. p. 98.' Of course, the equities of the maker cannot be cut off by the adoption of that form of proceeding; but there is no question in this case of cutting off equities. The case has been left wide open for the defendant to set up and make good any equities she may have. As a matter of fact, the judgment in the case is so framed as to allow these equities in full.
It is argued that, by suing as owner instead of as pledgee, the plaintiff has prejudiced defendant in her defense, because the obligations secured by the pledge are immature and contingent, and therefore could not have served as the basis for an attachment, and hence the attachments would have had to be dissolved on that ground if plaintiff had sued as pledgee. It might be enough to say that this objection addresses iteself to the attachment, and is therefore not to the purpose, since the attachment has already been dissolved ; but, apart from this, another obvious answer is, that this suit is not brought on the obligations secured by the pledge, but on the pledged note.
Defendant next contests the validity of the pledge. The grounds are, first, that a pledge cannot be given to hold harmless the surety on a bond; second, that the note was not indorsed by the pledgor; and, third, that the pledgee knew it did not belong to Dugue, and was without consideration.
*899 The counsel for plaintiff have not taken s.eriously the grounds first and second, and counsel for defendant seem not overpleased at this. But what else could they expect, when this first ground is in the teeth of article 3140 of the Code, which expressly authorizes the giving of a pledge for holding a surety harmless; and the second is in the teeth of article 3158 of the Code, as amended by Act No. 287, p. 348, of 1855, and by Act No. 157, p. 239, of 1900, which expressly does away with all formalities in the pledging of negotiable notes except the delivery thereof to the pledgee. Carter v. Merril, 14 La. Ann. 376; Clark v. Whitaker, 117 La. 298, 41 South. 580.
The third ground, as to whether plaintiff accepted the note in ignorance of its want of consideration, depends upon whether Mr. Milner, the agent who accepted the pledge for plaintiff, is to be believed, or Dugue. The lower court, and this court on the former hearing, believed Milner; and, after going over the case once more, we see no reason for adopting a different conclusion. Plaintiff having accepted the note in good faith before its maturity from one who had possession of it with the consent of the maker, its title as pledgee is as good as its title as purchaser would have been, if, instead of taking the note in pledge, it had purchased it. This is well settled. Chaffe & Sons v. Du Bose, 36 La. Ann. 257; Bank of Lafayette v. Bruff, 33 La. Ann. 624; Insurance Co. v. Lozano, 39 La. Ann. 322, 1 South. 608.
Finally defendant contends that plaintiff can recover nothing because the obligations secured by the pledge are not enforceable. The first, the $470.35 note, because not yet due; the second, the Deichman bond, because settled; the third, the Levy-Dugue bond, because all the debts which the bond was given to secure are prescribed.
As to the third of these defenses, the facts upon which the prescription of the debts in question would depend are not in the record, hence the court cannot pass on it. As to the second, all that is proved is that Dugue turned over to plaintiff a claim against one Diechman sufficient in amount to satisfy the debt, and that Deichman had no defense to make to the claim, but that plaintiff, nevertheless, compromised with him, without consulting Dugue. Evidently,- plaintiff had no right tó make this compromise, and must stand the loss, if Deichman had property out of which payment of the debt could have been enforced; but that fact is not shown, and hence this matter must be left open for future adjustment between the parties. As to the first of these grounds, the immaturity of the $470.35 is immaterial, since the note is not being sued on. This ground, and in fact all three grounds, confound between the note sued on and the note for the security of the payment of which it stands pledged. The pledgee of a note is expressly authorized by " the Code to bring suit on it. Article 3170, Civ. Code. That a pledgee may thus bring suit has been often decided. Chaffe & Sons v. Du Bose, 36 La. Ann. 257; Bank of Lafayette v. Bruff, 33 La Ann. 624; Insurance Co. v. Lozano, 39 La. Ann. 322, 1 South. 608; and many other cases.
Defendant has pleaded, but has not pressed, a plea of estoppel in pais. Nothing shows that either defendant or intervener were led to change their position by anything done by plaintiff, and hence the plea is not supported.
The debt secured by the pledge, including the contingent part of it, largely exceeds the amount of the pledged note. Therefore plaintiff is entitled to judgment for the full amount of the note, with a recognition of the mortgage and vendor’s privilege.
This mortgage, however, bears only on the real estate. It does not bear on the insurance money. A mortgage cannot exist on money, and, moreover, this money cannot be assimilated to the proceeds of the mortgaged property, but is the fruit of a contract entered into by the defendant independently of the *901 mortgage. Besides, the plaintiff has never pretended to have a mortgage upon this money. Plaintiff has urged no such claim in the petition nor in the brief. On the contrary, since attachment is a harsh remedy, available only in the absence of other remedy, plaintiff, by asking for an attachment, has ■ in effect represented to the court that it had no special right to, or hold or tie on, this money. For instance, a mortgage creditor cannot be entitled to an attachment, for the reason that the mortgage should be enforced by some other remedy.
Whether plaintiff might not, after the example of the intervener, have claimed the right to demand this money from the insurance companies in quality of beneficiary under the policies, which were made payable ■“to holders of mortgage notes as interest might appear,” is a question needless to be •considered, since no such demand is presented. Indeed, very far from suing upon such ground, plaintiff has expressly alleged that •defendant has violated her contract to insure the property in its favor. The only demand directed against the money in the petition is the attachment, with the concomitant prayer that the attaching creditor’s lien be recognized and enforced. That demand failing, no demand is left addressed to the possession •of the money or to any right upon it.
The judgment in favor of plaintiff will not be absolute. The fact is recognized by everybody in the case, including Dugue on the witness stand, that the pledged note was without consideration, hence, it has any validity only in so far as may be necessary for the protection of plaintiff as the bona fide pledgee of it before maturity. This phase •of the case will have to be reflected in the judgment; that is to say, the judgment will be executory only for the purpose of making good any judgment plaintiff may obtain against Dugue, the obligor on the debt secured by the pledge, with leave to defendant to intervene and defend any suit that may be brought for that purpose.
Having thus disposed of the case as between plaintiff and defendant, we proceed to consider the intervention. Before the suing out of the attachment, the situation was that intervener, Clement Jaubert, was claiming to be the beneficiary under two of the policies; and, as such, to be the owner of the sum thus due, up to the amount of his mortgage; and defendant was consenting that intervener should be so considered. The insurance company owing the money thus claimed by the intervener, the Royal Exchange Assurance of London, was garnished along with the other companies; but, for some unexplained reason, plaintiff consented that the amount garnished in the hands of this company, $2,326.75, instead of being paid to the sheriff under the attachment, as in the case of the other three policies, should be deposited with the clerk subject to the result of this suit — thereby consenting that said money should go from under the attachment. The situation, then, was that this money was in the hands of the clerk with no one claiming any right to the possession of it, except Jaubert for the amount of his mortgage, and the defendant for any residuum. The plaintiff, as herein-above explained, was not claiming to be the owner of it, or to have any mortgage rights upon it, but had simply attached it as defendant’s property, and then voluntarily released the attachment by consenting that the fund should be deposited with the clerk, instead of being paid to the sheriff under the attachment. In this state of things, it would seem that the proper course of Jaubert would have been to take a rule on the clerk (possibly making plaintiff and defendant parties to said rule) to show cause why the money should not be paid to him, as being the only person pretending to any right to it. Instead of taking such a rule, Jaubert intervened in *903 the suit, thereby adopting a form of proceeding as effective as the rule for bringing matters to an issue, but less direct and summary, and which has given rise to a question as between him and defendant, namely, whether interest on his mortgage should not be stopped at such time, as, by the more expeditious process of a rule, he could have secured the possession of this money in the hands of the clerk, to which no one was laying any claim but he. Inasmuch, however, as all parties have consented that the litigation should be settled in the present form of proceeding, we think that the rights of the intervener must be determined accordingly.
Intervener, however, cannot claim damages for the dissolution of the attachment, when it was consensually released before the filing of his intervention. And he cannot claim attorney’s fees, for the further reason that the attachment was not set aside by means of a separate trial on rule or motion to dissolve.
It is not over certain that, in consenting that this fund should go to the intervener up to the amount of his mortgage, defendant intended that attorney’s fees should be included; but intervener having had to “institute legal proceedings for the recovery of the mortgage debt,” under the express terms of the mortgage act, he is entitled to 5 per cent, attorney’s fees, and these fees form part of the mortgage debt.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiff, the Fidelity & Deposit Company of Maryland, have judgment against the defendant Ruth Johnston, for the sum of $3,000 with 8 per cent, per annum interest thereon from the 29th day of October, 1900, with recognition of mortgage and vendor’s privilege seeming the payment of this judgment on the following described property, to wit:
“Two certain lots of ground, with all the buildings and improvements thereon and all the rights, ways, privileges, and appurtenances thereunto belonging or in any wise appertaining, situated in the second district of this city, in square No. 503, bounded by Bienville, Cartez, Telemachus, and Customhouse streets, designated by Nos. 12 and 13, on a sketch made by P. A. d’Hemeeourt, deputy city surveyor, dated November 28, 1892, and annexed to - an act of sale by Albert Paul to Louis Berge, passed before Jos. D. Taylor, notary, on the 25th of December, 1892, which said lots adjoin each other and measure as follows: Lot No. 12 forms the corner of Bienville and Cortez streets, and measures 34 ft. 1 in. 1 line front on Bienville street by a depth and front on Cortez of 120 feet, between parallel lines. Lot 13 measures 27 ft. front on Bienville street by a depth-of 120 feet between parallel lines.”
This judgment, however, is to be executed only in so far as may become necessary for making good any judgment obtained by said judgment creditor against Joseph Dugue on the obligations for the security of which the note upon which this judgment has been obtained was pledged, with reserve of right to the said Ruth Johnston to intervene and defend any suit that may be brought against the said Dugue for that purpose.
It is further ordered, adjudged, and decreed that the defendant Ruth Johnston have judgment against the plaintiff, the Fidelity & Deposit Company of Maryland, for an amount equal to 7 per cent, on $2,000 and 5-per cent, on the rest of the funds in the hands of the clerk and sheriff from the 5th day of August, 1904, until the date of the filing of the present judgment in the lower court. The present judgment in favor of Ruth Johnston not to be offset by the judgment herein rendered against her in favor of the plaintiff.
It is further ordered, adjudged, and decreed that the fund deposited in the hands of the clerk of court herein by Royal Exchange Assurance of London, England, subject to the event of this suit, be paid to the intervener herein, Clement Jaubert, up to the amount of the mortgage note held by him in capital and interest, plus attorney’s fees to the amount of 5 per cent, on said capital and interest.
*905 It is further ordered, adjudged, and decreed that the attachment herein be dissolved and that the plaintiff, the Fidelity & Deposit Company of Maryland, pay the costs of the same, and also of the intervention of Clement Jaubert.
It is further ordered, adjudged, and decreed that after paying to Clement Jaubert the amount due on his mortgage and attorney’s fees, as hereinabove ordered, the clerk of court pay over to defendant Ruths Johnston the balance, if any, of the fund deposited in his hands by the Royal Exchange Assurance, of London, and that the sheriff pay to Ruth Johnston the money attached in this suit.
It is further ordered, adjudged, and decreed that plaintiff pay the costs of the intervention herein, and that the defendant pay the costs of the main suit, and the costs of appeal.
See dissenting opinion of BREAUX, C. J., 42 South. 366.