### No. 4641.

SUCCESSION OF A. H. D'MEZA. On opposition of MYERS & LEVY to provisional tableau.

A contract or promise to transfer or deliver a collateral to secure a debt resulting from the payment by the indorsers of notes indorsed for accommodation, gives no privilege or pledge upon the collateral not transferred or delivered in pursuance of said contract or promise.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J. Hays & New,* for opponents and appellants. *Trist & Olivier,* for executor and appellee.

WYLY, J. Myers & Levy opposed the homologation of the provisional account and tableau filed by the testamentary executor of A. H. D'Meza on the ground that they were not ranked as privilege creditors, but were placed as ordinary creditors on the tableau, and from the judgment rejecting their demand, dismissing their opposition and homologating the said tableau, they have appealed.

It appears that Myers & Levy have frequently been accommodation indorsers for D'Meza; that on fifteenth February, 1872, they indorsed one note for him for $2225 70, and on twenty-seventh March, 1872, they indorsed another for $1299 14, both payable at sixty days from date—in all, $3524 82—which they as indorsers had to pay at maturity; that in obtaining these indorsements, D'Meza represented to Myers & Levy that he had an insurance on his life for $10,000, issued by a New York Company, and that he would send on and have the policy divided into two of $5000 each, and he promised, as soon as the policies were returned, he would deliver to them one as security for said two indorsements. The indorsements were made doubtless on the faith of this promise. It further appears that D'Meza sent his

policy to New York and had it divided into two for $5000 each in his own favor, and when these policies were returned to him, he told Myers several times to go to his office and get the policy. He also told Myers to go to his office and to his book-keeper to get it, informing him that he had told the book-keeper that one of the policies was for Myers & Levy, but he did not go. The book-keeper, however, was not instructed by D'Meza to deliver the policy to Myers & Levy, although informed by his employer, D'Meza, that one of the policies was intended to be transferred to them. No transfer was made. After the death of D'Meza, the two policies were taken from his desk by the testamentary executor, and sent to New York and collected, and the proceeds are set down on the account to be distributed among the creditors of the succession.

That D'Meza intended to transfer one of these policies to the opponents to secure them as accommodation indorsers, there is no doubt; but the transfer was never made. The policies were never placed beyond the control of D'Meza. They remained in his desk, where he instructed his book-keeper to put them, till after his death. The theory that the policy for $5000 which D'Meza had promised to deliver to Myers & Levy was transferred, because it was put in possession of D'Meza's book-keeper for them, and the possession of the latter was their possession, is not borne out by the facts disclosed in the record. The book-keeper never held the policy as agent or trustee for Myers & Levy. Although informed of his employer's intention in regard to one of the policies, he was never instructed to deliver it to Myers & Levy or any one else. There was, therefore, no delivery of the policy to Myers & Levy, although the deceased intended to do so. Consequently they never held it as a pledge or collateral security for their accommodation indorsements. The proposition that there was a sale of the policy to them is not supported by the proof adduced by the opponents themselves, and besides, it is at variance with the judicial admissions in their petition of opposition, alleging that they have a special lien on said policy of $5000 to secure their debt, resulting from the payment of the notes of which they were accommodation indorsers. The opponents, Myers & Levy, pray that they "be decreed to have a privilege upon the life policy or the funds received thereon."

The averment and prayer of their petition, claiming a privilege on the policy, concede necessarily that the opponents have no ownership of the policy, because it would be inconsistent and absurd to set up a privilege upon a thing and claim the ownership thereof in the same suit. A privilege arises from the nature of the debt, and it gives a creditor a right upon the property of his debtor to secure the debt. If the opponents own the policy, there is no debt to be secured, and

their ownership of the property would not establish their demand to be ranked as privilege creditors of the deceased on account of their payment of the notes of which they were accommodation indorsers. Under the averments of their petition the opponents could not introduce proof of their ownership of the policy, and they offered none in support of it on the trial.

The proposition that the policy was sold to them is utterly unfounded, and the authorities which they offer in support of the position are without application to the case presented in the record.

Whether the opponents' remedy was an action to enforce the verbal contract with regard to the policy, or a suit for breach thereof, it is unnecessary to decide in disposing of this case. But it is proper to remark that a contract or promise to transfer or deliver a collateral to secure a debt resulting from the payment by the indorsers of notes indorsed for accommodation, gives no privilege or pledge upon the collateral not transferred or delivered in pursuance of said contract or promise; and this remark is pertinent to the case disclosed in the record.

Judgment affirmed.