## No. 11,693.

### BRITTON & KOONTZ VS. GEORGE C. HARVEY.   THE MIDDLESEX BANKING COMPANY, INTERVENOR.

*Movable property declared immovable by destination by the Civil Code remains so only so long as the conditions which fix its immobility exist and the rights acquired upon it have existence, otherwise it is subject to the will and pleasure of the owner, who can detach it, pledge it, or sell it.*

*No formal acceptance of pledged property is required.   Its delivery to and acceptance by the pledgee is sufficient to perfect the pledge under the written contract for movables pledged.*

A *bona fide* purchaser of property redelivered by the pledgee to the pledgor for temporary use will be protected against the claims of the pledgee on the property.

The drawer of the bill can validly pledge property to secure an accommodation acceptor, and also to protect the future holder of the bill.

APPEAL from the Eighth Judicial District Court, Parish of Concordia. *Dagg, J.*

*Elam & Dale* and *Lazarus, Moore & Luce* for Plantiffs and Appellants.

*H. R. Boyd* for Intervenor, Appellee.

The opinion of the court was delivered by

MCENERY, J.    This was an action brought in the District Court of Concordia parish, Louisiana, by the appellants against George C. Harvey, in which action writs of attachment and sequestration were issued, and certain property of the defendant, George C. Harvey, was attached and sequestered by the sheriff of Concordia parish. These writs were issued and levied in the month of November, 1893. Subsequently, in the early part of January, 1894, other writs of attachment and sequestration were issued and levied upon twenty head of mules. The Middlesex Banking Company intervened in said suit, claiming title to the said twenty head of mules. Issues were joined upon said intervention, and the case was tried upon an agreed statement of facts, which was as follows:

"It is hereby stipulated by and between Messrs. Elam & Dale, attorneys for the plaintiff in the above entitled suit, and H. R. Boyd, attorney for the Middlesex Banking Company, intervenor in the above entitled suit, that the above cases are to be tried in the above court upon the following facts as herein agreed upon, and that the said agreed statement of facts shall be taken as all the facts in this case in this court, and in any and all courts in which this case may go by appeal or otherwise.

"It is hereby stipulated and agreed that the Middlesex Banking Company is a corporation duly organized and existing under and by virtue of the laws of the State of Connecticut, and is duly authorized to do business in the State of Louisiana, and that heretofore, to-wit: on the 31st day of December, 1893, it purchased twenty head of

mules in *market overt* for the sum of two thousand two hundred dollars cash, in Memphis in the State of Tennessee, from one Robert Lockwood, and that the said Middlesex Banking Company did not know, at the time it purchased the said mules as above set forth, that there had ever been any pledge, equities or any rights against said mules of any kind whatsoever in favor of the plaintiffs above set forth or of any other person; that the said twenty head of mules are worth the sum of two thousand two hundred dollars, and that the same were attached and sequestered in the above entitled suits as the property of one George C. Harvey, and that the said writs of attachment and sequestration were issued out of the District Court of Concordia parish, State of Louisiana, and were levied on said mules by the sheriff of Concordia parish, in said parish and State on the ——— day of January, 1894.

"It is hereby stipulated and agreed that the said mules, so as aforesaid purchased by the Middlesex Banking Company, belonged to one George C. Harvey, and that the said George C. Harvey did, on the 9th day of May, 1893, in Concordia parish, State of Louisiana, make, execute and deliver to Dreyfous Bros. his certain act, a copy of which is hereto attached marked exhibit 'A,' and made a part of this agreed statement of facts. And that the said act was never recorded, and that the mules described in said act were delivered into the actual possession of W. H. Harvey, who was appointed agent for the pledgees as shown by said act, and that the said mules are the same mules claimed by the Middlesex Banking Company in this suit.

"It further stipulated and agreed that the said George C. Harvey used the said mules upon his certain plantation, known as Clermont plantation, in Concordia parish, State of Louisiana, under the supervision and control of W. H. Harvey, as shown by said act; and that the same were used by him from the 9th day of May, 1893, until about the 3d day of November, 1893, upon said plantation; and that on or about said date the said W. H. Harvey and George C. Harvey removed said mules from said plantation and from Concordia parish, in the State of Louisiana, to Pine Bluff, in the State of Arkansas. And that the said mules were held and used by them for some ten days as their property, and the same were shipped to and sold by them to one J. B. Daniels on the 28th of December, 1893, and the said mules were sold by the said Daniels to one R. L. Derrington on the 30th day of December, 1893, and that said Derrington sold the

said mules to one Robert Lockwood on the 30th of December, 1893, and that on the 31st day of December, 1893, the said Middlesex Banking Company purchased the said mules in good faith, as above set forth, from the said Robert Lockwood, and that the removal of said mules from said plantation, and from Concordia parish, in the State of Louisiana, and the sales above set forth, were made without the knowledge or consent of the plaintiffs herein; and it is further agreed that the plaintiffs, as soon as they received the information that the said mules were removed from said plantation, and from Concordia parish, State of Louisiana, sent men in pursuit of them.

" It is agreed that the affidavits for attachment and sequestration and writs of attachment and sequestration in the above suits in the said courts shall be considered as a part of this agreed statement of facts; that A. & M. Moses are now the owners of said note sued on in their said suit against the said George C. Harvey, and that they were the owners thereof prior to and at the time of the institution of said suit; that Britton & Koontz are now the owners of the drafts sued on in their suit against the said George C. Harvey, and were at the time of and prior to the institution of said suit. That Dreyfous Bros. failed in business prior to the institution of their suits, and were then and are now insolvent, and that the indebtedness to said plaintiffs is just, due and binding on all parties on said notes and drafts set out in said act made a part hereof."

A copy of the purported pledge, omitting the detailed description of the mules, is as follows:

" STATE OF LOUISIANA,    }
   " PARISH OF CONCORDIA. }

" Be it remembered that on this the 9th day of May, A. D. 1893, before me, Arestides J. Chaze, a notary public in and for the parish of Concordia and State of Louisiana, personally came and appeared George C. Harvey, residing in the parish of Concordia, who declared to me, said notary public, that he is indebted unto the commercial firm of Dreyfous Bros., of Natchez, Miss., in the sum of three thousand three hundred and forty-nine dollars and seven cents, with ten per cent. per annum interest from November 1, 1893, until paid, evidenced by his promissory note, dated April 29, 1893, in the sum of three thousand three hundred and forty-nine dollars and seven cents, bearing ten per cent. interest, payable to the order of Dreyfous Bros., at the banking house of Britton & Koontz, at Natchez,

Miss., on the 1st day of November, 1893, and paraphed '*Ne varietur*,' by me, said notary, to identify it with this act.

"The said George C. Harvey further declared that the said note was given to cover acceptances by the firm of Dreyfous Bros. for him, as follows:

"An acceptance in favor of W. H. Hendricks for the sum of two thousand dollars, dated January 4, 1893, due November 4, 1893, with ten per cent. per annum interest from its date.

"An acceptance in favor of A. & M. Moses for one thousand and eighty-five dollars and forty-one cents, with ten per cent. per annum interest from November 1, 1893, and due November 1, 1893.

"An acceptance for ninety-seven dollars, with ten per cent. per annum interest from November 1, 1893, in favor of A. & M. Moses, and due on November 1, 1893.

"He further declared that his above described note was given to cover said acceptance and interest thereon.

"That said George C. Harvey further declared that said acceptances were given and made for the purchase, from the said Hendricks and A. & M. Moses, of thirty-four head of mules and a horse, and given as advances upon his crop on the Clermont and Cypress Grove plantations, and his other cropping interests in the parish of Concordia, and that they are secured by an act of privilege and pledge upon the said crop.

"He further declared that this act of pledge is given as an additional collateral security for said note and acceptances, the said Dreyfous Bros. in no way waiving their security upon said crop by reason of the giving of the pledge as described herein.

"In order to more fully secure the said above described note, given for said acceptances, the said George C. Harvey further declared that he has specially pledged and pawned in favor of said Dreyfous Bros., of Natchez, Miss:, the personal property hereinafter described, which he guaranteed to be free from any lien, privilege or other encumbrance.

. "Mules on the Clermont plantation.    (Here follows a description of the mules.)

. "The said personal property is to remain subject to said pledge until the full and final payment of the said note and said acceptances, with principal and interest and attorney's fees as above stipulated in the sum of ten per cent.

" The said George C. Harvey further declared that he has deliv-ered and does deliver unto said firm the above described property, and the said Dreyfous Bros. acknowledge the actual delivery and possession of the property.

" It was further declared and agreed between the said George C. Harvey and the said Dreyfous Bros., herein represented by Ben. Dreyfous, a member of said firm, that W. H. Harvey is constituted the agent of the said firm of Dreyfous Bros., to have and retain pos-session of the above described property during the existence of this contract and pledge, and the said parties have this day placed the said property in the actual possession of the said W. H. Harvey, by the consent of the said G. C. Harvey and the said Dreyfous Bros., for the purpose herein stated.

" It is further agreed and stipulated that in the event the said notes and acceptances are not paid at their maturity, the said firm of Dreyfous Bros. is authorized to sell said property, at private sale, for the best price obtainable, and that said property shall be sold without the necessity of resorting to any court of justice, and at private sale.

" The said Geo. C. Harvey further declared that he obligates him-self unto and in favor of said firm of Dreyfous Bros., and unto and in favor of any future holder of said note or acceptances, for all attor-ney's fees which they may incur or pay to enforce the collection of said note and acceptances, which attorney's fees are fixed at ten per cent. of the amount placed in the hands of counsel for collec-tion."

The Middlesex Banking Company relies in this case upon five propositions in support of its title to the twenty head of mules.

1. That the purported act of pledge is void, and that Geo. C. Harvey had no right to pass such an act.

2. That the purported pledge was never accepted by Dreyfous Bros., nor by any one for them.

3. That if Britton & Koontz ever had any valid lien upon the mules, it was lost by the delivery of the mules back to Geo. C. Har-vey by W. H. Harvey.

4. That the Middlesex Banking Company is an innocent purchaser of said mules, and is entitled to be protected under the law in its purchase.

5. That Britton & Koontz never acquired any interest in the prop-

erty purported to be pledged, either upon the face of the instrument or otherwise, and have no standing in any court for the enforcement of their supposed rights.

There was judgment in the lower court in favor of the plaintiffs, Britton & Koontz, and against defendant, Geo. C. Harvey, for two thousand dollars with interest, and for attorney's and notarial fees. The writs of attachment and sequestration were sustained as to defendant Geo. C. Harvey, and the privilege thereunder was recognized and ordered to be enforced on the property seized, and there was judgment in favor of plaintiffs against the g rnishees Gillis, Leverich & Co. There was judgment in favor of the intervenor for the twenty mules claimed. From the judgment for the intervenor, the plaintiffs, Britton & Koontz, appealed.

The first proposition of plaintiff is not tenable. To adopt the views of the intervenor would defeat his own claim, as the property would remain immovable, and title could only pass by written act.

The Code divides and classifies all property, corporeal and incorporeal, both immovable and movable, and the classification and description is made in accordance with the nature of the thing, its destination and the objects to which it is applied.

It would be a great undertaking to state the reasons for this division and description of property, the actions necessary to enforce any right springing from the same, and the obligations resulting therefrom, and their interpretation, as they are referable to one or the other classification.

It is a positive declaration of the Code that movables by destination are immovable. It is a pure fiction, and does not change the nature of the property. It is immovable by destination only so long as the conditi ns exist and the rights upon which it as such have existence; otherwise it is subject to the will and pleasure of the owner, who can detach it, sell it, or pledge it. Weil vs. Lapeyre, 38 An. 303; Girard vs. New Orleans, 2 An. 901; Caffin vs. Kirwan, 7 An. 221.

The written act of pledge is signed by Dreyfous Bros., by their agent, B. Dreyfous. They have not denied his authority. The signing of the act was consent to the pledge, and the delivery of the property perfected it. We know of no law here, however, which requires the pledgee to make a formal written assent to the pledge. The delivery of the pledge is, in itself, an acceptance and assent to

the existence of the pledge. On this point the statement of facts is: "That the mules described in said act were delivered into the actual possession of W. H. Harvey, who was appointed agent of the pledgees, as shown by said act." Auge vs. Varick, 31 An. 865.

The contract of pledge entered into between the parties is exceptional in its character.

There are three obligations secured by it—the note and the acceptances given for it.

It would, on a casual reading of the contract, appear that the acceptances were merged in the note. But we are of the opinion that the holders of the acceptances are protected by the act of pledge.

The acceptor becomes the principal debtor and the drawer is advanced to the front as first endorser, and the drawer is surety on the bill or note for its payment, and can be compelled to do so when the requisite steps have been taken to insure his liability, which is conditional. In this case the drawer gave security by way of pledge to protect the acceptor, who was an accommodation acceptor, and entered into a further agreement to secure, by way of pledge, his obligation as endorser. The other acceptances and the note are not before us. As a fact the pledge was given to secure the payment of the price of the mules, for which drafts or check were given, and accepted by Dreyfous Bros. as accommodation acceptors. He was secured by a pledge which was to continue in existence until the payment of the acceptances.

He undoubtedly held the pledge in trust for the holders of the acceptances. It was the debt which gave character to the pledge, and which gives the right and remedies of the parties under it, and not the pledge which determined the nature of the debt. Daniels on Negotiable Instruments, Sec. 2, par. 834.

Every lawful obligation may be enforced by the auxiliary obligation of pledge. Civil Code, 3136.

The principal obligation may be conditional. Civil Code, 3137.

There is, therefore, no reason why one can not give a pledge to secure his obligation as endorser. Civil Code, 3140.

Nor is there any reason why two obligations can not be enforced by the same auxiliary obligation of pledge. In the instant case the pledgor and drawer of the draft entered into the contract of pledge to secure the accommodation acceptor, and a further obligation in favor of the holder, to secure by the pledge the holder of the acceptance in case of non-payment by the acceptor.

The objection that the act of pledge was not recorded in the parish of Concordia is without force, as it is only necessary in relation to movable property that the contract be written, and actual delivery be made of the thing pledged.

Continued possession of the thing pledged by the pledgee is essential to its validity, and it is well settled that a delivery back of the possession of the thing pledged to the pledgor terminates the title, unless such delivery be for a temporary purpose only, or be to the pledgor in a new character, such as a special bailee or agent.    Jones on Pledges, Sec. 40.

The common and civil law in regard to the delivery of the property to the pledgor for a temporary and special purpose is practically the same; the latter providing, however, that the temporary possession shall be in the interest of the creditor, so that he shall not lose exclusive possession of the same, and the temporary possession of the thing pledged does not cover a fraud.

The temporary possession must be special and limited; and not for the pledgee's own use and benefit.    The admission in the statement of facts shows that the pledgor, George C. Harvey, did not have the mules for a special and limited purpose, but that his possession was absolute and unqualified, as he used them for the cultivation of his plantation, for his exclusive use and benefit.    In other words, he was not a special bailee of the pledgee for a particular purpose, such as the putting of the pledgor in possession of the property to have some work done on it for the benefit of the pledgee, the redelivery of a note to the pledgor for the special purpose of collection, nor was his possession limited as to time and use.    It has been held that when a horse has been temporarily loaned to the pledgor, that he might have the use of it, the pledge was destroyed as to a bona fide purchaser, or an attaching creditor.    Day vs. Swift, 48 Me. 368; Colby vs. Cressy, 5 N. H. 237; Geddes vs. Bennett. 6 An. 316.

The case of Reeves vs. Capper, 5 Bing. N. C. 136, and referred to in Casey vs. Cavaroc, 96 U. S. 467, was where the master of a ship having pledged his chronometer to the owners, they permitted him to keep it on board their ship and use it for the purpose of navigating the ship for a limited time without losing their lien.    If there was any possession of the chronometer in the pledgor, it was for the benefit of the pledgee, or it was a co-operative possession by which the pledgee never dispossessed himself of the chronometer.    And in

the case of Jacquet vs. Creditors, 38 An. 863, the question at issue was one of possession of the thing pledged. There was no issue raised as to the sale of the thing pledged by the pledgors, who had temporary use of the pledged property. The possession of the property under such circumstances by the pledgee is *prima facie* evidence that the debt has been paid and that he is in full ownership of the property. But even if the temporary possession had been placed in the pledgor by plaintiffs a *bona fide* purchaser would be protected.

" Thus the fact that the pledgor of a horse obtained possession for a special purpose, such as to drive for a few miles to visit a relative upon the promise to return it in a day or two, and while upon the visit traded this horse for another, does not enable the pledgee to recover the horse from the purchaser." Jones on Pledges, Sec. 47.

There was manifestly no felonious possession of the pledge by Geo. C. Harvey when he sold the mules. His possession was lawful, as he had obtained the same with the consent of the agent of the plaintiff. He held the legal title to the property and was in lawful possession of the same, and was vested with all the evidences of entire ownership. The *bona fide* purchasers of the property must be protected.

Judgment affirmed.

Rehearing refused.