## BACHER v. KRAUSS et al.
### No. 14941.

Court of Appeal of Louisiana. Orleans.
March 18, 1935.

Walter G. Wedig, of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellees.

LECHE, Judge.

Plaintiff obtained a judgment for $10,000 against Fernand B. Cavelier and Leopold Krauss, in solido, and caused a writ of fieri facias to issue on said judgment. In execution of that writ, garnishment process was issued in order to seize any funds and credits of Leopold Krauss in the hands of Krauss Company, Limited, Whitney National Bank of New Orleans, and Mr. Leon Heymann. In answer to the interrogatories, the Whitney National Bank admitted having in its possession certain bonds as the property of Mr. Leopold Krauss, which were delivered to it by Mr. Leon Heymann, who claimed to be the pledgee thereof. In his answer to the interrogatories, Mr. Heymann admitted delivering the said bonds to the Whitney National Bank, but contended that the same were pledged to him by Mr. Krauss. On motion of plaintiff, the Whitney National Bank was ordered to show cause why it should not forthwith deliver said bonds to the civil sheriff to satisfy the seizure. After a hearing, plaintiff's rule was dismissed by the trial court, and from the judgment dismissing his rule plaintiff has appealed.

There is no dispute as to the facts. The bonds in question consist of two first mortgage 5 per cent. 50-year gold coupon bonds, Nos. 7169 and 1156 of the New Orleans Great Northern Railroad Company, of the par value of $1,000 each, and $2,000 par value convertible 6 per cent. debentures of the Apalachian Gas Corporation, series B, due May 1, 1945. The record discloses that these bonds were purchased by Mr. Leon Heymann and paid for by him with his own funds for the account of Mr. Leopold Krauss. They were never in the actual possession of Mr. Krauss, but were delivered by Mr. Heymann to the Whitney National Bank, and deposited there by him in the name of Leopold Krauss, whom the bank considered as the owner thereof and to whom they would have delivered the bonds on demand. Mr. Heymann, as testified to by Mr. Breckinridge, an officer of the bank, often deposited bonds with them, sometimes in his own name, sometimes in the name of Krauss Company, Limited, and sometimes in the names of other persons. The transaction in the present case was handled entirely by Mr. Heymann, who deposited these bonds in the name of Mr. Krauss. It further appears from the record that Mr. Krauss was indebted to Mr. Heymann in a sum exceeding $17,000, and it is claimed that the bonds were held in pledge by Mr. Heymann to secure, as far as possible, the payment of this debt. Nowhere in Mr. Heymann's personal records or in the records of Mr. Krauss or those of the Whitney Bank is there any mention or memorandum of a pledge of these bonds by Mr. Krauss to Mr. Heymann, and it appears to us inconceivable, in view of the fact that Mr. Krauss was indebted to him in a large sum of money, that Mr. Heymann, an able business man, would advance his own funds to purchase bonds for the purpose of holding them as security against that debt, as such a procedure would, in fact, increase the debt instead of securing it. The vital element in this case, however, which precludes the existence of a contract of pledge, is the fact that Mr. Heymann, the alleged pledgee, divested himself of possession and control of the bonds. They were delivered by him to the bank, placed there in the name of Mr. Krauss, and Mr. Breckinridge testified that the bank considered Mr. Krauss to be the owner of the bonds and would have delivered them to him on demand. Mr. Heymann thus lost control of the property, and control must pass from the pledgor to the pledgee.

In the case of Merchants & Farmers Bank & Trust Co., et al. v. First State Bank & Trust Co., 11 La. App. 553, 123 So. 401, 402, the court said: "Control of the pledge must, under the law, pass from the pledgor to the pledgee, and this is a necessary condition which can only be brought about by actual delivery. Under the facts in this case there was nothing to prevent the pledgor from obtaining control and custody of the notes from the United States District Court, after the pledge was made, and to dispose of the notes in violation of the attempted pledge."

That is precisely the situation which obtains here. Under the facts in this case, there was nothing to prevent Mr. Krauss, the alleged pledgor, from obtaining control and custody of the bonds from the Whitney National Bank after the pledge was made and disposing of them in violation of the attempted pledge.

The principle that the pledgee must *retain* possession of the pledged property is clearly set forth by Professor Denis in his work on "Contract of Pledge," in which he says:

"84. The pledge being a contract of natural law is formed, at Common Law, by the mere consent of the parties and delivery of possession of the thing pledged to the pledgee. No written act is necessary as evidence of the contract. No registration is necessary as notice to third persons. Possession by the pledgee is notice to the world. But there must be delivery and *continued possession* in the pledgee. *This is of the very essence of the contract of pledge.* Without possession there is no valid pledge. * * *

"86. On the principle that, for the validity of the pledge, the pledgee must have possession of the thing pledged, and that the reason of it is to prevent fraud and deception by the pledgeor, there is a perfect accord between the Civil Law and the Common Law.

"Mr. Jones says in words of the same purport as the articles of the Louisiana Code: 'To constitute a pledge the pledgee must take possession; and to preserve it he must *retain* possession. An actual delivery of property capable of personal possession is essential.' * * *

"122. The pledgee must receive and *retain* possession of the thing pledged in order to render his lien and rights effective against third persons. The object of the law is that, by the possession of the pledgee, third persons dealing with the pledgeor should be informed and warned that they cannot look to the thing pledged as being any longer part of the active assets of the pledgeor. That possession must, therefore, be ostensible, not ambiguous, and must receive a certain publicity or notoriety. * * *

"134. The fundamental rule of the law of pledge that, for the validity of the contract, there must be a delivery of the thing to the pledgee, and that he must *preserve and retain* the possession of it as long as his debt is not paid and the contract lasts, that rule belongs equally to the Civil and the Common Law, and is *of the essence* of the pledge under both systems of law." (Italics ours.)

It is clear from the foregoing that, when Mr. Heymann deposited the bonds with the bank in the name of Mr. Krauss and subject to withdrawal by him, the contract of pledge, if it ever existed, was extinguished, and the bonds became subject to seizure by other creditors of Mr. Krauss.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff's rule be, and the same is hereby, made absolute, and, accordingly, that the Whitney National Bank be, and it is hereby, ordered to turn over forthwith to the civil sheriff the bonds and debentures described in plaintiff's rule, for the purpose of sale in order to satisfy the judgment of plaintiff.

Reversed.