### FOOTE v. SUN LIFE ASSUR. CO. OF CANADA (GESSNER, Intervener).*
#### No. 16635.

Court of Appeal of Louisiana. Orleans.
April 5, 1937.

A. Deutsche O'Neal, of New Orleans, for appellant.

J. I. McCain, of New Orleans, for Mrs. Jessy Benedict Gessner, intervener-appellee.

McCALEB, Judge.

This is a contest for the available proceeds of a life insurance policy. The facts of the case are undisputed (except as to unimportant details) and we find them to be as follows:

For some time prior to November 21, 1932, one John R. Foote was engaged in the investment brokerage business in the city of New Orleans. One of his clients was Mrs. Jessy Benedict Gessner. Foote had handled a number of transactions for Mrs. Gessner involving large amounts of money and had also borrowed from her various sums. On November 21, 1932, having become indebted unto her to a considerable extent, he executed a written itemized statement of his indebtedness, in which he listed certain bonds and other securities of an undetermined value, together with certain cash items amounting to the sum of $1,750.

In order to secure this admitted indebtedness, Foote, on May 1, 1934, pledged, by written act, two certain insurance policies on his life, one issued by the Sun Life Assurance Company of Canada for $1,500 and another by the Lincoln National Life Insurance Company for $2,500. This act of pledge reads as follows:

"May 1, 1934

"The two life insurance policies in my name, now in the possession of Jessy Benedict Gessner, I gave her as pledges for the money I owe her, which exceeds the combined values of the two said policies. They are The Lincoln National Life Insurance Co. #375694 for $2500. The Sun Life Assurance Co. of Canada #1299963 for $1500."

Shortly after the foregoing pledge was given to Mrs. Gessner, a premium on the life policy issued by the Sun Life Assurance Company of Canada became due and it was agreed, between Mrs. Gessner and Foote, in order to avoid a forfeiture of the policy, that this policy (which was in the possession of Mrs. Gessner at the time) would be delivered to the insurance company as security for the payment of the premium. Accordingly, on or about August 14, 1934, Mrs. Gessner and Foote called at the office of the insurance company and the policy was delivered to it as security for the payment of the past-due premium. The insurance company issued a receipt for the policy, which receipt, since the date of its issuance, has been in the possession of Mrs. Gessner.

On March 25, 1936, Foote died. Thereafter, his succession was opened admittedly for the purpose of collecting the proceeds of the $1,500 policy issued by the Sun Life Assurance Company of Canada which was payable to his executors, administrators, or assigns. It is conceded, by both parties to this controversy, that the only asset of Foote's estate is this $1,500 life insurance policy and that the other life insurance poli-

cy for $2,500, with the Lincoln National Life Insurance Company, is worthless.

Mrs. Foote, the duly qualified administratrix of her husband's succession, made claim upon the Sun Life Assurance Company of Canada, on May 8, 1936, for the payment of the proceeds of the policy, which is conceded to be the sum of $1,472. Likewise, on April 21, 1936, Mrs. Gessner, alleging to be the pledgee of the policy, under the act of pledge above quoted, made claim for the proceeds. Both claims were rejected.

As a result of the refusal of the insurance company to accede to her demand, the administratrix of Foote's succession instituted this suit against the insurance company for recovery of the proceeds of the policy.

In due course, the company appeared, and, taking advantage of the provisions of Act No. 123 of 1922, interpleaded both the administratrix of the succession of Foote and Mrs. Gessner. The bill of interpleader of the insurance company alleges, in substance, that, on July 15, 1931, it issued a policy of insurance on the life of John R. Foote; that he died on March 25, 1936; that at the time of his death there was payable under the policy the sum of $1,472; that after the death of said Foote, the administratrix of his succession, as well as Mrs. Gessner, made demands upon it for the proceeds of the policy; that the claim of the administratrix was based upon the fact that the policy was payable to her and the claim of Mrs. Gessner was founded upon a pledge of the policy. It admitted that it was liable to one of the claimants in the sum of $1,472. By disclaiming any interest in the proceeds, and upon deposit of the same in the registry of the court, the district judge dismissed the insurance company from further liability in the premises.

Mrs. Gessner appeared, in answer to the interpleader proceeding instituted by the insurance company, and averred that she was entitled to the proceeds of the policy because it had been pledged to her by Foote in the manner as above set forth.

The administratrix also answered the bill of interpleader of the insurance company, setting forth that she is entitled, as beneficiary, to the proceeds of the policy and further asserting that the act of pledge, under which Mrs. Gessner claims, is invalid and unenforceable.

On these issues, the case was heard by the district court and resulted in a judgment in favor of Mrs. Gessner, recognizing her claim as pledgee of the insurance policy and entitled, as such, to the proceeds of the insurance deposited in the registry of the court. The claim of the administratrix of Foote's estate was dismissed. Wherefore this appeal.

It is obvious, from the above statement of the case, that the only question for determination here is one of law, viz.: Whether or not the pledge of the insurance policy by Foote to Mrs. Gessner, on May 1, 1934, is valid and enforceable.

Foote's signature to the act of pledge has been proved. The evidence also sustains the conclusion that the policies of insurance were delivered to Mrs. Gessner, and that Foote was actually indebted unto her in a sum of money far in excess of the value of the policies pledged.

However, counsel for the administratrix of Foote's succession contends that the pledge is invalid and unenforceable on three grounds, viz.: (1) Because the act of pledge does not set out the amount of the debt secured by it, as provided in article 3158 of the Revised Civil Code; (2) because the debtor (insurance company) of the pledged nonnegotiable insurance policy was not notified of the existence of the pledge; and (3) because Mrs. Gessner lost possession of the pledge when she allowed the policy to be surrendered to the insurance company, as security for premiums due said company, without notifying the company that the policy had been pledged to her.

On the other hand, counsel for Mrs. Gessner contends that the questions advanced by the administratrix, concerning the unenforcibility of the pledge, are not available to her, inasmuch as she is not acting for third persons or creditors of Foote in this proceeding but is only representing Foote's heir, who is, at all events, bound by his deed.

Article 942 of the Revised Civil Code reads:

"The heir being considered seized of the succession from the moment of its being opened, the right of possession, which the deceased had, continues in the person of the heir, as if there had been no interruption, and independent of the fact of possession."

And Article 943 provides:

"The right of possession, which the deceased had, being continued in the person

480

of his heir, *it results that this possession is transmitted to the heir with all its defects, as well as all its advantages, the change in the proprietor producing no alteration in the nature of the possession.*

"Thus the extent of the rights of the deceased regulates those of the heir, who succeeds to all his rights which can be transmitted, that is, to all those which are not, like usufruct, attached to the person of the deceased." (Italics ours.)

The foregoing articles demonstrate that, if the pledge herein asserted was valid as to Foote, the pledgor, it is also enforceable against his heir. It is suggested, however, that the administratrix of a succession represents the creditors of the deceased and not the heirs. It is true that such is the case in most successions, but, where the only asset of the estate is an insurance policy made payable to the administrator or executor of the deceased, the administrator, with respect to the collection of the proceeds of the policy, can only represent the heir of the estate because the proceeds of the life insurance are, by law, exempt from the payment of the debts of the succession. Section 1 of Act No. 189 of 1914, as amended and re-enacted by Act No. 88 of 1916, provides:

"* * * That the proceeds or avails or dividends of all life, including fraternal and co-operative, health and accident insurance *shall be exempt from all liability for any debt, except for a debt secured by a pledge of policy,* or any rights under such policy that may have been assigned; or any advance payments made on or against such policy." (Italics ours.)

This act has been further amended by Acts Nos. 95 and 155 of 1934, but the changes made are not of importance to the question here involved.

In Succession of Aronson, 168 La. 887, 123 So. 608, it was held that insurance policies in favor of the deceased, his executors, and legal representatives formed no part of his estate and should not have been included in the administration.

The doctrine announced in that case was somewhat contracted by the court in the Succession of Erwin, 169 La. 877, 126 So. 223, wherein it was held that, while the proceeds or avails of life insurance policies, payable to an executor or an administrator, were part of the estate, they were considered to be such only in so far as the heirs of the deceased were concerned, but, quoad the creditors of the insured, they form no part thereof. This view has been approved and reaffirmed in the Succession of Cotton, 170 La. 828, 129 So. 361, and the Succession of Dumestre, 174 La. 482, 141 So. 35.

Applying the foregoing statutes and the rulings of the Supreme Court to the case at bar, we find that the administratrix of Foote's estate represents the deceased's heir in so far as the proceeds of the policy in question are concerned. We further hold that, under articles 942 and 943 of the Revised Civil Code, if the pledge of the policy in suit was valid and binding upon Foote, himself, it is likewise enforceable against the administratrix of his estate as she can only claim the avails thereof in her capacity as agent for his heir.

This leads us to a consideration of the alleged invalidity of the pledge to Mrs. Gessner as contended for by counsel for the administratrix. His first point is that the pledge is unenforceable because it does not set out the amount of the debt secured by it as required by article 3158 of the Revised Civil Code, which provides in part:

"*But this privilege shall take place against third persons only in case the pledge is proved by some written instrument, in which shall be stated the amount of the debt intended to be secured thereby,* and the species and nature of the thing given in pledge." (Italics ours.)

A mere reading of the above language is a sufficient answer to counsel's postulation, as it is plain that it has reference solely to the binding effect of the pledge on third persons. The administratrix, as we have above pointed out, is not a third person in the instant case, but is the agent of the heir of the deceased. The fact that the amount of money owed by Foote to Mrs. Gessner is not stated in the act of pledge could only be availed of by third persons and not by the pledgor or persons claiming through him. The cases of Cater v. Merrell & Co., 14 La.Ann. 375, 376, Gay & Co. v. Pike, 30 La.Ann. 1332, De Blois; Syndic v. Reiss, 32 La.Ann. 586, and Commercial Bank v. Shanks, 129 La. 861, 56 So. 1028, relied upon by the administratrix, are inapposite because in those matters the rights of third persons were involved.

It is next claimed by the administratrix that the pledge is unenforceable

because the debtor insurance company was not notified of its existence. Article 3160 of the Revised Civil Code is directed to our attention as substantiating this proposition. That article provides:

"When the thing given in pledge consists of a credit or instrument not negotiable, the pledge shall be complete *as to all the world, as soon as the debtor of such pledged credit or instrument shall have been notified in writing of the giving of such pledge.*" (Italics ours.)

It is apparent that this article is without application to the immediate parties to the agreement and may only be invoked by a third person. The obvious purpose of its enactment was to prevent the debtor of the security pledged from paying his obligation to the pledgor or to any one else, other than the pledgee, where he has written notice of the pledge. The cases of Commercial Bank v. Shanks, supra, Williams v. Succession of Robertson, 133 La. 640, 63 So. 250, Succession of Gragard v. Metropolitan Bank, 106 La. 298, 30 So. 885, and Donoven & Daley v. Travers & Hermann, 122 La. 458, 47 So. 769, cited by the administratrix, do not sustain her point.

■ It is further asserted by the administratrix that the pledge is invalid because the privilege was lost when the pledgor and pledgee surrendered the policy to the life insurance company as security for the payment of the premiums due thereon. Article 3162 of the Revised Civil Code is depended upon to fortify the argument. That article provides:

"In no case does this privilege subsist on the pledge except when the thing pledged, if it be a corporeal movable or the evidence of the credit if it be a note or other instrument under private signature, *has been actually put and remained in the possession of the creditor, or of a third person agreed on by the parties.*" (Italics ours.)

The facts of this case disclose that the insurance policy was actually delivered to Mrs. Gessner and remained in her possession until August 14, 1934, when, by agreement of the parties (pledgor and pledgee), it was surrendered to the insurance company for the purpose of avoiding a forfeiture for nonpayment of premiums. Consequently, the requirements of article 3162 were complied with because the policy was put in the possession of the pledgee and was later transferred to the possession

of the debtor (a third person) by agreement between the parties to the pledge. Moreover, after the policy was delivered to the insurance company, the receipt therefor was turned over to Mrs. Gessner, the pledgee, and remained in her possession from that time on.

The Succession of A. H. D'Meza, 26 La. Ann. 35, is cited by the administratrix in support of her contention. But, there, the policy of insurance was never delivered to the pledgee or to any one else by agreement of the parties, but remained at all times in possession of the alleged pledgor.

Much reliance is placed by the administratrix in the case of Bacher v. Krauss et al., 159 So. 766, decided by this court. But that case is readily distinguishable from the instant one. In that case, it appeared that Heymann purchased certain bonds with his own funds and deposited the same in the Whitney Bank in the name of Krauss. The Whitney Bank was not informed of the fact that Heymann had any claim to the bonds and they were at all times subject to withdrawal by Krauss and actually within his control. Creditors of Krauss seized the bonds in the hands of the bank. We held that, under these circumstances, the asserted pledge of the bonds to Heymann was invalid, in so far as third persons were concerned, because Heymann had lost control of the property and that, under the law, control of the pledge must pass from the pledgor to the pledgee. But, in the case at bar, Mrs. Gessner did not lose control of the policy pledged to her, as she retained the receipt of the insurance company at the time the policies were surrendered to it by agreement between Foote and herself. Furthermore, the case of Bacher v. Krauss is different from the instant one in that, there, again, the contest was between the alleged pledgee and a creditor of the pledgor. The result might have been different if the pledgor himself had attempted to resist the claim of Mr. Heymann, as the administratrix of the pledgor is attempting to do in this case.

■ The law is also well settled that the pledgee does not lose his pledge where he consents that, for a limited time or for a specific purpose, the property pledged be placed in the hands of another person or even in the hands of the pledgor himself. In Conger v. City of New Orleans, 32 La. Ann. 1250, the Supreme Court says:

482

"Possession, though essential to the validity of the pledge, need not be always in the creditor. It is sufficient that the thing pledged be in the possession of one occupying ad hoc, the position of a trustee. The debtor himself may, in some cases, be considered as such trustee and be given possession of the thing by him pledged, provided his tenure be precarious and clearly for account of the creditor. The Louisiana doctrine is in perfect accord with both the common, the Roman and French laws."

See, also, Britton and Koontz v. Harvey, 47 La.Ann. 259, 16 So. 747.

It has also been held that, in case a single collateral is pledged by two separate and distinct contracts, to two creditors, whose claims aggregate the value of the collateral, possession by one is a possession for the benefit of the other, and, in this respect, each is the agent of the other pro hac vice. See Levy v. Winter, 43 La.Ann. 1049, 10 So. 198. Thus, in the case at bar, the policy was pledged to Mrs. Gessner to secure a debt to her and, later, by agreement of both pledgor and pledgee, the policy was surrendered as a pledge to the insurance company as security for the unpaid premium. Under this state of facts, the possession of the insurance company was for the benefit of itself and for Mrs. Gessner to the extent of their respective claims. Our view in this respect is fortified by the recent decision of the Supreme Court in Dickson Ice Cream Co. v. Knight, 177 La. 735, 149 So. 439, wherein it was held that the pledgee of rent notes did not surrender the pledge when he consented that a certain portion of payments should be applied otherwise than to payment of the indebtedness to him.

We are, therefore, of the opinion that the district court was correct in recognizing Mrs. Gessner as pledgee under the agreement of pledge herein asserted by her and entitled as such to the proceeds of the insurance policy now in the registry of the civil district court.

Finally, the administratrix contends that, in any event, she is entitled to a judgment for the costs of administration of the succession of her husband, which amount to the sum of $322.19. The theory of this argument is that the proceeds of the policy were payable to his estate and that, therefore, the court costs and other law charges operate as a first lien on the proceeds of the policy. The claim is entirely without merit. See Act No. 88 of 1916 and cases above cited.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.