423 So.2d 1065 (1982)
L. Russell KEENE, II
v.
Warren S. WILLIAMS, et al.
No. 82-C-1353.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 7, 1983.
*1066 A.J. Gray, III, Camp, Carmouche, Palmer, Barsh & Huhter, Lake Charles, Mack E. Barham, Charles F. Thensted, Barham & Churchill, New Orleans, Oliver P. Stockwell, William B. Monk, Stockwell, Sievert, Viccellio, Clements & Hsaddock, Lake Charles, Greve Stafford, Jr., Stafford, Stewart & Potter, Alexandria, for applicant.
Lemuel E. Hawsey, III, Anderson, Anderson, Steffes, Hawsey, Patrick & Stakelum, Baton Rouge, William Ledbetter, Bossier City, for respondents.
CALOGERO, Justice.
In this litigation, plaintiff L. Russell Keene, in both the district court and the Court of Appeal, has secured a judgment rescinding the 1976 sale of an apartment complex by First Federal Savings & Loan Association of Alexandria (First Federal) to Bayou Partnership, and a judgment ordering First Federal to sell Keene the same property. Plaintiff's lawsuit, filed six weeks after the First Federal sale to Bayou Partnership on June 21, 1976, was for specific performance of a contract by which First Federal had granted Keene a right of first refusal concerning the sale of the apartment complex.
The Bayou Wood Villa Apartments were built in Maplewood, Louisiana by Wilbert R. Wilder and Joseph H. Schaeffer. The construction of the apartment complex was financed by a loan from First Federal. When the apartments were completed in the latter part of 1974, the borrowers defaulted on the loan. In March of 1975, the borrowers executed an assignment of the rents and revenues in favor of First Federal. The project was then placed under the supervision of Henry C. Voorhies, a vice-president of First Federal.
Shortly thereafter, Keene, knowing of the financial difficulties associated with the project, contacted First Federal regarding the possibility of purchasing the apartment complex. Negotiations thereafter took place, wherein First Federal and Keene were trying to accomplish a sale of the property from Wilder and Schaeffer to Keene, with Keene assuming the First Federal loan, although perhaps, with loan terms for Keene more favorable than had existed for Wilder and Schaeffer.
On November 4, 1975, when it appeared at best questionable as to whether the sale was going to be accomplished, First Federal and Keene executed an agreement entitled "OPTION." It was a two page contract consisting primarily of an agreement concerning Keene's purchasing the complex under specified terms in the event the sale from Wilder and Schaeffer to Keene could *1067 be accomplished before December 30, 1975 and without the necessity of a foreclosure by First Federal.[1] The contract also contained a paragraph dealing with the contingency that the sale before December 30, 1975 were not to take place and that First Federal were to foreclose. That paragraph provided:
If First Federal forecloses on the Bayou Wood Villa project. Mr. Keene will have the right of first refusal on purchasing and financing the project with First Federal.
When it became apparent that a conventional sale from Wilder and Schaeffer to Keene could not be accomplished before December 30, 1975 (mainly because of title problems resulting from Wilder's and Schaeffer's association with a partnership and Schaeffer's bankruptcy petition), First Federal proceeded with the foreclosure. By this means, First Federal acquired the property on January 7, 1976. On January 20, 1976, Keene attached the property's legal description to his November 4, 1975 contract with First Federal, and recorded the instrument in the conveyance records of Calcasieu Parish. On this same day, Voorhies wrote a letter to Keene, notifying him that First Federal would be soliciting offers for the complex and inviting Keene to submit a bid. Keene chose not to submit a bid, apparently believing that it might be more advantageous to allow First Federal to find another purchaser, and offer, and thereupon to consider exercising his right of first refusal.
Voorhies again wrote to Keene on February 13, 1976, soliciting an offer on the complex and advising him that "We are very willing to honor the terms of our confidential agreement with you, signed and dated November 4, 1975." In effect, First Federal was offering to sell Keene the property under the same terms earlier conditionally agreed upon.
In early April advertisements were run in several newspapers soliciting sealed bids on the Bayou Wood Villa Apartments. The bids were to be submitted by May 10, 1976. All bids received in response to this solicitation were rejected. However, because First Federal was anxious to sell the property, Voorhies contacted one of the bidders, J. Robert Adams, in an attempt to negotiate an acceptable sale of the property. Voorhies was eventually successful and there was signed, on June 4, 1976, an agreement for the sale of the property between First Federal and J. Robert Adams, acting on behalf of Bayou Partnership. The parties acknowledged in this agreement that the sale was subject to Keene's right of first refusal.
On Monday, June 7, 1976, Voorhies arranged to have lunch with Keene in Lake Charles, Louisiana, where he personally delivered a letter notifying Keene of First Federal's agreement with Bayou Partnership. A copy of that purchase agreement was attached. The letter, recognizing Keene's right of first refusal, offered to sell this property to Keene for the identical price, terms, and conditions contained in the attached agreement. The letter further provided that Keene "must deliver the deposit in certified funds, along with an identical agreement executed by [him] ... [to] the office of our attorney, Paul E. Palmer... no later than 5:00 p.m. on June 14, 1976." After reading the letter, Keene asked Voorhies about the $3,000.00 he had earlier deposited with First Federal pursuant to the November 4, 1975 agreement. Voorhies then added a hand written postscript to the letter which provided:
If Russell Keene does not purchase the project, his $3,000 deposit will be returned. If he purchases the project according to the stated terms and conditions, *1068 the $3,000 will apply to the purchase price.
This postscript was initialled by both men.
The November 4, 1975 contract between First Federal and Keene, which did not blossom into a sale, had provided that First Federal's mortgage loan to Keene would be in rem only. The First FederalBayou Partnership agreement did not so provide. Keene therefore contacted Voorhies on June 9, 1976 to inquire whether the mortgage securing the loan would be in rem. Voorhies initially responded that it would. But after discussing the matter with First Federal's President, and upon realizing that the agreement with Bayou Partnership was not limited to in rem financing, Voorhies telephoned Keene later that same day and told him the financing would not be in rem, either with Bayou, or with him, should he exercise his right of first refusal.
On June 14, 1976, Keene met with Palmer. He inquired about the reference in the June 7th letter to a deposit of certified funds. After being unable to contact either Voorhies or Evans, First Federal's president, Palmer informed Keene in writing that the reference to a deposit was in error since there was no requirement of a deposit in the agreement between First Federal and Bayou Partnership, (the agreement which had been attached to the June 7th letter). Thereupon, Keene requested an extension. Palmer extended the deadline for acceptance from June 14, 1976 to 5:00 p.m. on June 15, 1976.
On June 15, 1976, a letter was presented to Palmer, written by Thomas M. Bergstedt as Keene's "attorney-in-fact," and informing First Federal that Keene would respond to the June 7, 1976 offer before 5:00 p.m. on June 23, 1976. Therein, Bergstedt noted that no time limit was set on Keene's exercise of his right of first refusal granted in the November 4, 1975 contract. He discussed the problems Keene had had in comprehending the terms of the June 7, 1976 offer and the importance of "making a business decision for a substantial amount of monetary committment." He concluded that it was reasonable for Keene to be allowed more time to consider the offer. First Federal did not immediately respond to this letter. But on June 21, 1976, counsel for First Federal submitted a letter to Bergstedt stating that First Federal did not accept Keene's unilateral extension and that steps were being taken to convey the property that very day. The property was in fact sold to Bayou Partnership that day, June 21, 1976.
On June 22, 1976, Bergstedt wrote Palmer advising him that as Keene's "attorney-in-fact" he was accepting the offer to purchase the property on Keene's behalf. Keene did not, however, execute a similar agreement to the Bayou agreement as was required by the June 7th offer, nor did he unequivocally agree to purchase the property on the same terms and conditions specified in the Bayou agreement. To the contrary, the concluding paragraph of that letter provided:
In accepting this tender, Mr. Keene does not waive any rights he may have to seek enforcement of prior agreements with First Federal savings & Loan Association of Alexandria.
The instant suit was filed by Keene six weeks later, on August 5, 1976. The trial court ruled that Keene was not afforded sufficient time to exercise his right of first refusal, that is, to accept First Federal's offer of sale of the property. He found, therefore, that the sale to Bayou Partnership should be rescinded and that Keene was entitled to specific performance of the contract, i.e. to have the property conveyed to him. The Court of Appeal affirmed that ruling upon finding that the right of first refusal was valid, that specific performance was a permissible remedy for breach of the right of first refusal, and that Bayou Partnership's argument that it had relied on the public records had no merit.
Petitioners, First Federal and Bayou Partnership, argue to this court that the Court of Appeal neglected to discuss the decisive issue in the case, that is, whether Keene timely exercised his right of first refusal by unconditionally agreeing to purchase the property for the same price and *1069 under the same terms and conditions as provided in the contract to sell between First Federal and Bayou Partnership.
Petitioners' main contention here is that the trial court erred in finding that Keene timely exercised his right of first refusal, or for that matter, that he exercised it at all. It is argued that no acceptance has ever been made of the offer to purchase the complex. The attorney, Bergstedt, who asserted that he was accepting the offer on behalf of Keene, never produced any written authorization evidencing his right to do so. Furthermore, they argue that there was never an unconditional acceptance or exercise of the right of first refusal because Keene reserved his right to seek enforcement of the November 4, 1975 contract terms which were more favorable, and he did not execute an agreement identical to the Bayou Partnership agreement as was required. In the event that this Court finds that there was an acceptance, they contend that the acceptance was untimely, coming as it did after the 5:00 p.m., June 15th deadline and one day after the sale of the property to Bayou Partnership. In the lower courts it was argued that the right of first refusal granted in the November 4, 1975 agreement was invalid because it did not provide a specified time within which it had to be exercised.
Keene, on the other hand argues that the right of first refusal was valid, and that he was not given a reasonable amount of time to exercise it. He contends that the terms of the June 7th offer were unclear, and not clarified until June 14, 1976. First Federal gave him only 24 hours in which to exercise his right after clarification of the "ambiguous" June 7th offer. Thus he contends that the limit First Federal placed on the exercise of his right of first refusal was invalid and that he should have had a reasonable amount of time after the clarifications to make his decision. He argues that his promise to inform First Federal by June 23, 1976 was reasonable and that First Federal violated his right of first refusal by selling the property on June 21, 1976.
There are several legal issues involved in this case, any one of which might, favorably to relators, be dispositive. Pretermitting consideration of the other issues, we find most compelling petitioners' argument that Keene did not timely accept the offer.
The initial agreement between Keene and First Federal, dated November 4, 1975, granted Keene a right of first refusal. A right of first refusal, also referred to in the Civil Law as a pacte de preference (right of pre-emption) is the option and preferred right to buy property at the price offered by a third party in the event the owner desires to sell it.[2] S. Litvinoff, Obligations §§ 104 & 108 in 7 Louisiana Civil Law Treatise 187, 198 (1975).
The November 4th agreement did not specify a time within which the right had to be exercised were Keene to be presented a copy of a bona fide agreement along with First Federal's offer to sell to him the property on those same terms and conditions. For purposes of this discussion, we will assume that the absence of such a specified time does not invalidate the underlying obligation (under La.C.C. Art. 2462) and that *1070 there was in the agreement an implied condition that Keene would be given a reasonable amount of time under the circumstances to either accept or reject the offer.[3]
Thus, the question presented for our determination is, considering all of the circumstances, what was a reasonable amount of time for Keene to decide whether to accept the offer, and/or, was the time afforded him here reasonable.
It seems that at the outset, there was some disagreement or perhaps misunderstanding, about exactly what rights Keene had been afforded under the November 4, 1975 agreement. First Federal may initially have been under the impression that they were simply compelled to offer the property to Keene after their acquisition by foreclosure for the same price and under the same terms and conditions set out in the November 4th agreement. Keene, on the other hand, was acutely aware that the right of first refusal would afford him more than simply the right, or opportunity, to negotiate a purchase of the property under the price and terms contemplated in the November 4th agreement. He explained:
I had a right of first refusal. Why should I negotiate with First Federal? I let them do all the negotiating. All I had to do was either decide or reject .. whatever figure they negotiated with someone else ....
Presumably Keene took this position based on the belief that by being patient he might be able to get the property at a better price or under better terms and conditions. He knew that First Federal was anxious to sell the property and resume the role of a mortgage creditor with a loan not in default.
However, when First Federal did finally negotiate a deal with Bayou Partnership it was not, as Keene had expected, on terms less favorable for First Federal than those in the November 4th agreement. Just the contrary, it was at a higher price and without in rem financing. It was at this point that Keene apparently took a different view of First Federal's obligation under the November 4th agreement. By his actions, conversations and correspondence with First Federal, it seems that Keene was, at this point, of the view that he ought to be able to purchase the property according to the terms set out in the November 4th agreement. Rather than simply deciding whether he wanted to accept or reject the offer according to the terms set out in the agreement between First Federal and Bayou Partnership, Keene began negotiating with First Federal for the preferable November 4th terms.
Keene's vacillationtaking the position that he had a right of first refusal when that position seemed more advantageous, and then dickering for the November 4th contract terms when that became more favorableis apparently what contributed to his not exercising his right of first refusal within the 8 days afforded him by First Federal.
Irrespective of how the parties may have chosen to interpret the agreement of November 4th, once First Federal had to foreclose, that agreement did nothing more than grant Keene a right of first refusal, that is, the right to purchase the property at the price and terms offered by a third party in the event First Federal chose to sell it. At the time First Federal made the offer to Keene, to sell Keene the property in accordance with the agreement First Federal had with Bayou Partnership, Keene did not then have the right to begin negotiating with First Federal for a better price or different terms. He was only entitled to decide either to accept or reject the offer as presented. We need simply determine whether Keene was given a reasonable opportunity to make that decision.
On June 4, 1976, First Federal entered into an "Agreement to Purchase and Sell" with Bayou Partnership. That agreement *1071 provided that Bayou Partnership would purchase the property for $780,000.00, $624,000.00 of which was to be financed with First Federal "at 8¾% amortized at thirty (30) years and payable in fifteen (15) years with the final payment to be a balloon payment." It further provided that the act of sale was to be passed on or before June 30, 1976, or within 26 days. The agreement was expressly made subject to Keene's right of first refusal.
On Monday, June 7, 1976, Voorhies personally handed Keene a letter offering to sell the property "for the identical price terms and conditions contained in the attached agreement." The agreement between first Federal and Bayou Partnership was attached to the offer. The offer further provided that if Keene chose to accept the offer he was to execute and deliver an identical agreement to purchase to First Federal's attorney before 5:00 p.m. on June 14, 1976. Keene, not objecting to the fact that he was being given only seven days to accept the offer, had Voorhies add the postscript to the effect that Keene's $3,000.00 deposit incident to the November 4th agreement would be returned to him should he "not purchase the project," or alternatively "appl[ied] to the purchase price."
Keene now argues that seven days was not a reasonable period of time for him to decide whether he would be able, and should choose, to purchase a $780,000.00 complex. He complains that it took him all seven of those days to clarify the terms of the offer. Once the terms were clarified he was only given 24 hours to accept or reject the offer.
The "clarifications" involved two matters. The first was whether the financing would be in rem. This question was prompted chiefly by the fact that the previous agreement Keene had with First Federal made provision for in rem financing.
Keene argues that the agreement was unclear on whether the financing was to be in rem or not because Bayou Partnership was described as being a partnership in commendam. He reasoned that since some of the partners in an in commendam partnership have only limited liability, then perhaps the financing was as a practical matter in rem. This argument is not persuasive.
Keene was either to accept or reject the offer in accordance with the identical terms of the agreement between First Federal and Bayou Partnership. That agreement did not provide for in rem financing. The limited liability of some partners in a partnership in commendam is irrelevant to the partnership's financing arrangement with First Federal. The agreement did not provide for in rem financing and Keene was offered only the same terms as those in the agreement. Furthermore, even assuming that there was some confusion over this point, Keene contacted Voorhies about it on June 9, 1976 and, although originally told by Voorhies that it would be in rem, he was informed later that same day that the financing would not be in rem.
The other clarification that Keene felt was essential to his decision concerned the fact that the June 7, 1976 letter made reference to a deposit of certified funds. However, the agreement between First Federal and Bayou Partnership made no reference to a deposit of certified funds and Keene had only to execute an agreement identical to the Bayou agreement in order to accept the offer.
Therefore, although the letter reference to certified funds was a mistake, a review of the attached First FederalBayou agreement made that evident. Furthermore the error was clarified and resolved in Keene's favor when he contacted First Federal about it on June 14, 1976, the last day he had within which to accept the offer. At that time he was informed of the obvious, that the reference to a deposit of certified funds was a mistake, as no such deposit was involved in the Bayou agreement, the terms of which were being offered Keene.[4] *1072 At this time Keene made a request for an extension to further consider the offer in light of the "clarifications." Keene was given an additional 24 hours, or until June 15, 1976 at 5:00 p.m.
Neither of these alleged necessary "clarifications" were of such a nature as to have seriously impaired Keene's opportunity to decide whether to accept or reject the offer as presented. Under Keene's right of first refusal, he had only to accept the same terms as were in the attached Bayou agreement. He could not be required to accept more onerous terms, but neither was he entitled to more favorable ones. That he chose to use his decisional time frame for securing "clarifications" or negotiating more favorable terms was of his own making. We find that the seven days and 24 hour extension was not unreasonably short.
Keene lived near the property in question and was very familiar with it. He had examined the property sufficiently just six months earlier when he had determined that he was interested in buying the property. In fact, he had entered into an agreement concerning its purchase on November 4, 1975. Keene knew from the outset that First Federal was not interested in owning the property and was trying to avoid that eventuality. Once First Federal did acquire the ownership of the property, Keene was well aware of the fact that they needed to sell it as soon as possible and that they would be negotiating an acceptable sale forthwith. Keene himself was contacted in January and asked to make an offer. Again, in February, First Federal offered to sell Keene the property under the same terms that had been agreed upon in the November 4th agreement. Keene refused both these requests, believing that he could obtain a better price by waiting and forcing First Federal to find another buyer and then exercising his right of first refusal. Nevertheless, he was fully aware of First Federal's interest in selling the property as soon as possible and that he would more than likely be presented with an offer under his right of first refusal within a short time.
When First Federal did finally receive an acceptable offer for the property on June 4, 1976, that offer was conditioned on the sale's being closed within 26 days, by June 30, 1976. Confronted with the need and desire to sell the property within 26 days, whether to Bayou Partnership or Keene, First Federal gave Keene a full eight days in which to accept or reject, a decision which would thereupon set in motion a short 18 day period for the title examination and preparation for the act of sale.
Finally, when First Federal did make the offer to Keene, giving him seven days (and later an eighth day) to accept it, Keene did not protest. In fact, it can plausibly be urged that Keene agreed to that time limit when he got Voorhies to add the postscript that Keene would be returned his $3,000.00 deposit if he did not choose to purchase the property. However, even discounting the possibility that Keene agreed to the seven day option period in return for the prospect of recovering his $3,000.00 deposit, the time afforded him was reasonable considering all the circumstances.
It is also relevant that Keene never did unconditionally accept the offer. The letter by Keene's attorney on June 22, 1976, stating that Keene intended to accept the offer was not accompanied by an executed agreement identical to the Bayou agreement, as was required. To the contrary, it is obvious from that letter, that still, at that late date, Keene was attempting to procure the more beneficial terms of the November 4, 1975 agreement rather than accepting First Federal's offer to sell him the property for the price and terms set forth in the Bayou First Federal agreement.
We find that the eight days afforded Keene by First Federal to consider the offer to purchase the property according to the terms of the Bayou agreement was a reasonable amount of time under the circumstances. *1073 Keene did not timely accept that offer and, thus, no agreement to buy and sell took place. Accordingly, the lower courts erred in holding that the sale to Bayou Partnership must be rescinded and the property transferred to Keene.

Decree
For the foregoing reasons, the judgments of the lower courts holding that the sale to Bayou Partnership must be rescinded and the property transferred to Keene are reversed, and judgment is rendered in favor of Bayou Partnership and First Federal Savings & Loan Association of Alexandria dismissing plaintiff's lawsuit with prejudice.
REVERSED AND RENDERED.
NOTES
[1] The terms of the agreement provided, among other things, that Keene would assume the loan in rem with a reduction in the interest rate to 7 and ½ percent for 30 years. (The Wilder and Schaeffer 30 year loan was at 8 and ½ percent.) Keene was to bring the principal and interest payments current through November 1975, and he was to give First Federal a demand note for $78,143.04, payable when Keene was presented with title insurance guaranteeing title to the property. The agreement also referred to a $3,000.00 "good faith deposit" which Keene had already paid, the deposit to be applied to the amount required to bring the loan current.
[2] The Court of Appeal held that Keene had acquired a valid right of first refusal under the November 4, 1975 contract, relying on Crawford v. Deshotels, 359 So.2d 118 (La.1978). In Crawford we were confronted with the question of whether a right of first refusal was valid under La.C.C. Art. 2462 which requires that an option have a stipulated time within which it must be accepted or rejected. Therein we held that it was valid because the stipulated time was that point in time when the owner should choose to sell after receipt of a bona fide offer. In Crawford, however, the agreement further provided that after the owner decides to sell and receives a bona fide offer, and offers the property to the optionee, the optionee was to have thirty days to decide whether to accept or reject the offer. The instant case is distinguishable from Crawford because there was no stipulated time in the November 4, 1975 contract within which Keene had to act on the offer should one be made to him. Therefore, resolution of this issue is not necessarily controlled by Crawford.

The Court of Appeal did not address petitioners' other contention that Keene has never unconditionally accepted the offer at all. And there was also the matter of "agent in fact" Bergstedt's not having written authority to commit Keene to the purchase of real property.
[3] Obviously, depending on the circumstances of the offer, what would be considered a reasonable amount of time could vary. For instance, if the offer were made after ten years one would assume that more time would be needed to consider the offer than if it were to be made closer in time to the original negotiations.
[4] The reference to the deposit of certified funds was placed in a proposed letter to Keene at an earlier time when First Federal had thought it had secured a different buyer. When that deal fell through and First Federal closed the deal instead with Bayou Partnership, the earlier letter was amended and the reference to a deposit of certified funds was inadvertently left in the letter.